**ORAL ARGUMENT SCHEDULED FOR APRIL 13, 2026**

**No. 25-5302**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

MEDIA MATTERS FOR AMERICA,
                                        *Plaintiff-Appellee*,
v.
FEDERAL TRADE COMMISSION, *et al.*,
                                        *Defendants-Appellants*.

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

**REPLY BRIEF FOR APPELLANTS**

———————————

DANIEL GUARNERA
*Director*

KELSE MOEN
*Deputy Director*

GEOFFREY GREEN
*Assistant Director*

BUREAU OF COMPETITION

LUCAS CROSLOW
   *General Counsel*

ALEX POTAPOV
   *Deputy General Counsel*

H. THOMAS BYRON III
   *Deputy General Counsel*

STEPHEN T. FAIRCHILD
ROBERT E. ZUVER, JR.
ETHAN D. BECK
   *Attorneys*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue NW
Washington, D.C. 20580
(202) 326-2527
*hbyron@ftc.gov*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), undersigned counsel certifies as follows:

### A.     Parties and Amici

Plaintiff-appellee is Media Matters for America.  Defendants-appellants are: the Federal Trade Commission; Andrew N. Ferguson, in his official capacity as Chairman of the Federal Trade Commission; Mark R. Meador, in his official capacity as Commissioner of the Federal Trade Commission; John Doe 1, in their official capacity as Commissioner of the Federal Trade Commission; and John Doe 2, in their official capacity as Commissioner of the Federal Trade Commission.[*]

There were no amici in district court.  In this Court, the New Civil Liberties Alliance filed an amicus brief in support of neither party and the following entities filed amicus briefs in support of plaintiff Media Matters: Foundation for Individual Rights and Expression; Cato Institute; The Press Freedom Defense Fund; CalMatters; Center for Investigative Reporting, Inc.; The Coalition for Independent Technology Research; The Dangerous Speech Project; Defending Rights & Dissent;

---

[*] Former Commissioner Melissa Ann Holyoak was named as a defendant in her official capacity as Commissioner of the Federal Trade Commission.  She resigned from her position on November 17, 2025, and her seat has not been filled by a successor.  Pursuant to Rule 43(c)(2), she is no longer a defendant, and any successor will be automatically substituted for her.

Electronic Frontier Foundation; First Amendment Coalition; Free Press; Freedom of the Press Foundation; Local Independent Online News Publishers; MuckRock Foundation; The National Coalition Against Censorship; Open Vallejo; Project on Government Oversight; Public Knowledge; Reporters Without Borders, Inc.; The Society for the Rule of Law Institute; American Civil Liberties Union; American Civil Liberties Union of the District of Columbia; The Associated Press; The Atlantic Monthly Group, LLC; The Center for Investigative Reporting; The Guardian U.S.; The McClatchy Company; National Newspaper Association; National Press Photographers Association; The New York Times Company; Newsday LLC; Online News Association; Pro Publica, Inc.; Radio Television Digital News Association; Reporters Committee for Freedom of the Press; The Seattle Times Company; Society of Professional Journalists; Lawyers Committee for Civil Rights Under Law; Asian Americans Advancing Justice – AAJC; Feminist Majority Foundation; Hispanic Federation; Japanese American Citizens League; The Leadership Conference on Civil and Human Rights; League of United Latin American Citizens; National Womens Law Center; Sikh American Legal Defense and Education Fund; United Church of Christ Media Justice Ministry, Inc.

**B.     Rulings Under Review**

The district court decision on appeal is the preliminary injunction order (App.256) and opinion (App.208), entered on August 15, 2025, by the Honorable Sparkle L. Sooknanan in *Media Matters for America v. Federal Trade Commission*, No. 25-cv-1959 (D.D.C.).  The district court's opinion is available at 805 F. Supp. 3d 105.

**C.     Related Cases**

This case has not previously been before this Court.  The case remains pending in the court below.  Counsel are aware of no related cases within the meaning of the rule.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................v

GLOSSARY ......................................................................................... viii

INTRODUCTION AND SUMMARY ....................................................1

ARGUMENT .........................................................................................4

I.    Media Matters Cannot Prevail on the Merits. ...............................4

A.    The District Court Lacked Authority to Hear Media Matters' Pre-Enforcement Challenge. ...............................................4

1.    *Thunder Basin* precludes jurisdiction. ......................................4

a.    Congress's "fairly discernible" preclusive intent does not depend on a particular procedure. ..................5

b.    Media Matters' claims are precisely "of the type" that Congress channeled to the statutory review mechanism. ..................................................................9

2.    Media Matters lacks an implied equitable cause of action.......14

3.    Media Matters failed to exhaust the retaliation issue. ............16

B.    Media Matters Is Not Likely to Prevail on Its First Amendment Retaliation Claim. ................................................17

1.    Media Matters cannot demonstrate a causal connection between its speech and the CID.................................17

a.    The undisputed evidence demonstrates that the Commission acted for nonretaliatory reasons...............18

b.    Media Matters' purported evidence of retaliation fails as a matter of law. ................................................21

2.    Media Matters also cannot demonstrate that the CID had the requisite chilling effect........................................25

II.    Equitable Factors Support Reversal. ...........................................27

CONCLUSION....................................................................................29

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Sandoval*,
  532 U.S. 275 (2001)............................................................... 15-16

*Alpine Sec. Corp. v. FINRA*,
  121 F.4th 1314 (D.C. Cir. 2024).............................................6

*Anderson v. Davila*,
  125 F.3d 148 (3d Cir. 1997)............................................... 26-27

*Aref v. Lynch*,
  833 F.3d 242 (D.C. Cir. 2016) ............................................ 23, 27

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015)...............................................................15

*Axon Enterprise, Inc. v. FTC*,
  598 U.S. 175 (2023)........................................1, 2, 4, 6, 10-11, 12-13

*Beacon Theatres, Inc. v. Westover*,
  359 U.S. 500 (1959)...............................................................15

*Belle Fourche Pipeline Co. v. United States*,
  751 F.2d 332 (10th Cir. 1984) ........................................... 14-15

*Carr v. Saul*,
  593 U.S. 83 (2021)...............................................................16

*Elgin v. Dep't of Treasury*,
  567 U.S. 1 (2012)..................................................................7

*FTC v. Claire Furnace Co.*,
  274 U.S. 160 (1927)......................................................... 5-6, 14

*FTC v. Complete Merch. Sols., LLC*,
  No. 2:19-cv-00996, 2020 WL 2059847 (D. Utah Apr. 28, 2020) ......................16

*FTC v. Mt. Olympus Fin., LLC*,
  211 F.3d 1278 (Table), 2000 WL 419825 (10th Cir. 2000) ...............................12

*FTC v. Texaco, Inc.*,
  555 F.2d 86 (D.C. Cir. 1977) ...............................................25

*FTC v. XCast Labs, Inc.*,
  No. 21-1026, 2021 WL 6297885 (C.D. Cal. Dec. 9, 2021)................................12

*Gen. Fin. Corp. v. FTC*,
  700 F.2d 366 (7th Cir. 1983)..................................................................5

*Global Health Council v. Trump*,
  153 F.4th 1 (D.C. Cir. 2025) .............................................................15

*Hartman v. Moore*,
  547 U.S. 250 (2006)..........................................................................26

*John Doe Co. v. CFPB*,
  849 F.3d 1129 (D.C. Cir. 2017) ............................................... 1-2, 6, 7

*LabMD, Inc. v. FTC*,
  776 F.3d 1275 (11th Cir. 2015) .........................................................11

*Media Matters for Am. v. Bailey*,
  No. 24-cv-147, 2024 WL 3924573 (D.D.C. Aug. 23, 2024)........................ 18, 21

*Media Matters for Am. v. FTC*,
  No. 25-5302, 2025 WL 2988966 (D.C. Cir. Oct. 23, 2025).............. 3, 17, 18, 19

*Media Matters for Am. v. Paxton*,
  138 F.4th 563 (D.C. Cir. 2025).................................................. 10, 11

*Moore v. Garnand*,
  83 F.4th 743 (9th Cir. 2023) .............................................................26

*NAACP v. Claiborne Hardware Co.*,
  458 U.S. 886 (1982)..........................................................................25

*Nat'l Rifle Ass'n of America v. Vullo*,
  602 U.S. 175 (2024)..........................................................................26

*Nat'l Taxpayers Union v. SSA*,
  376 F.3d 239 (4th Cir. 2004)..............................................................11

*Nieves v. Bartlett*,
  587 U.S. 39 (2019)............................................................................17

*Patten v. District of Columbia*,
  9 F.4th 921 (D.C. Cir. 2021)...................................................... 1, 2, 7

*Rehberg v. Paulk*,
  611 F.3d 828 (11th Cir. 2010) ...........................................................26

*Reisman v. Caplin*,
  375 U.S. 440 (1964)..........................................................................14

*Rosenberg v. Rector & Visitors of Univ. of Va.*,
  515 U.S. 819 (1995)..........................................................................20

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020) ....................................................................................12

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994) ........................................... 1, 2, 4, 6, 12, 13, 14

*Ukiah Adventist Hosp. v. FTC*,
    981 F.2d 54 (D.C. Cir. 1992) .....................................................................5

*United States v. Morton Salt*,
    338 U.S. 632 (1950) ..................................................................................25

*Wearly v. FTC*,
    616 F.2d 662 (3d Cir. 1980) ............................................................. 14, 15

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ................................................................26

*Yee v. City of Escondido*,
    503 U.S. 519 (1992) ..................................................................................18

## STATUTES

15 U.S.C. § 57b-1 ........................................................................................8, 9

## REGULATIONS

16 C.F.R. § 2.4 ................................................................................................8

16 C.F.R. § 2.7 ................................................................................................8

16 C.F.R. § 2.10 ..............................................................................................8

16 C.F.R. § 4.17 ............................................................................................16

## OTHER AUTHORITIES

*First Choice Women's Res. Ctrs., Inc. v. Platkin*,
    No. 24-781 (U.S.) ............................................................................. 12, 27

*NewsGuard Techs., Inc. v. FTC*,
    No. 1:26-cv-0353, ECF No. 21 (D.D.C. Feb. 26, 2026) .............................. 17, 19

## GLOSSARY

| | |
|---|---|
| App. | Appendix |
| CID | Civil Investigative Demand |
| Dkt. | District Court Docket Entry |
| FTC | Federal Trade Commission |
| FTC.Br. | Opening Brief For Appellants Federal Trade Commission, et al. |
| MM.Br. | Brief For Plaintiff-Appellee Media Matters for America |
| PTQ | Petition to Quash |
| Stay Opp'n | Appellee's Opposition to a Stay Pending Appeal (Sept. 2, 2025) |

**INTRODUCTION AND SUMMARY**

The Commission's opening brief identified two fundamental reasons why this Court should reverse the unprecedented preliminary injunction here. First, the district court lacked jurisdiction because Congress channeled review to CID enforcement proceedings. Second, the CID had no connection to Media Matters' purportedly disfavored speech and instead was part of a broader investigation into unlawful advertising boycotts. Each of these arguments is dispositive, and Media Matters has failed to rebut either.

As to reviewability: the FTC Act's detailed statutory review scheme—consistent with the unbroken, nearly century-long line of precedent rejecting pre-enforcement challenges to federal agency subpoenas—channels claims like this one into CID enforcement proceedings brought by the agency. Media Matters fundamentally misreads the Supreme Court's decisions in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), and *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), by insisting that Congress can channel claims only to a petition for review from an administrative decision to a court of appeals. But *Axon* makes plain that Congress decides the appropriate review mechanism, 598 U.S. at 185, and this Court has applied *Thunder Basin* to statutory schemes directing review to district courts (including in a case involving an agency CID). *Patten v. District of Columbia*, 9 F.4th 921, 927-28 (D.C. Cir. 2021); *John Doe Co. v. CFPB*, 849 F.3d 1129, 1134

(D.C. Cir. 2017) (per curiam).  Indeed, the argument for exclusivity is *stronger* when the statute provides for district court review.  *Patten*, 9 F.4th at 927-28.

Media Matters equally misapprehends *Axon* and *Thunder Basin* in arguing that it can escape the FTC Act's claim-channeling merely because it is suffering ongoing harm.  But both of those decisions *presuppose* that delayed review may cause ongoing harm, even "significant" and "onerous" harm.  598 U.S. at 191-92; 510 U.S. at 205, 218.  The Supreme Court in *Axon* permitted an exception only for "structural constitutional claims" that are "fundamental, even existential"—such as a claim about an agency's "power to proceed at all."  598 U.S. at 180, 189, 191-92.  And Media Matters' retaliation claim is a run-of-the-mill challenge to a specific agency action that falls far outside of *Axon*'s scope.

Media Matters also wrongly minimizes the decisions holding that implied causes of action are not available where the relief sought was not traditionally available in equity and where Congress has foreclosed them.  And it does not contest that the FTC Act required exhaustion or that it failed to exhaust its retaliation claim.

As to the merits, Media Matters' original theory—which persuaded the district court and the stay panel majority—was that the CID was issued in retaliation for a 2023 Media Matters article criticizing Elon Musk and X.  That theory has never been sustainable, including because the Media Matters CID was part of a broader investigation involving a number of entities that of course did not publish the 2023

2

article and, as the stay panel majority acknowledged, could not "plausibly … seek similar relief." *Media Matters for Am. v. FTC*, No. 25-5302, 2025 WL 2988966, at *11 (D.C. Cir. Oct. 23, 2025) (per curiam).  The fact that those entities received CIDs directly undercuts Media Matters' causation argument.

The stay panel majority understood this problem and addressed it by suggesting that the Media Matters CID might be broader than the others.  2025 WL 2988966, at *9.  Media Matters never made that argument and makes no attempt to defend it now.  Rightly so: the stay panel put the burden on the wrong party and, at any rate, it is undisputed that other CIDs in the investigation *were* as broad as the Media Matters CID, making clear that its retaliation claim fails under the panel majority's analysis.

Instead, Media Matters has changed tack, abandoning its focus on the 2023 article, and asserting that *the entire investigation* is ideologically motivated.  This theory is nothing more than speculation.  Media Matters has not even *alleged* the facts necessary to support it, and acknowledges (MM.Br.49-50) that it lacks the information to substantiate it.  Moreover, this new theory completely departs from the stay panel majority, which, as noted above, relied on the purportedly *unique* nature of the Media Matters CID.  And finally, it is not a retaliation theory at all— instead, it is an attempt to smuggle in a selective prosecution claim which Media Matters did not bring and could not substantiate if it had.  The late pivot to this new

3

and unsubstantiated theory of causation only underscores Media Matters' inability to identify any causal link between the CID and its 2023 article.

The district court's preliminary injunction improperly impedes the FTC's ability to investigate potential violations of the antitrust laws.  But the reverberations of adopting Media Matters' theories will echo far beyond this case.  Media Matters has invited the Court to lay out a roadmap for halting virtually any federal agency investigation.  This would disrupt a system of agency law enforcement that has protected the public for over a century.  This Court should decline the invitation.

## ARGUMENT

### I. MEDIA MATTERS CANNOT PREVAIL ON THE MERITS.

#### A. The District Court Lacked Authority to Hear Media Matters' Pre-Enforcement Challenge.

##### 1. *Thunder Basin* precludes jurisdiction.

The FTC Act's comprehensive review scheme easily satisfies *Thunder Basin*'s claim-channeling test because it reflects the "fairly discernible" intent to preclude pre-enforcement CID challenges, which are claims "of the type" Congress intended to be channeled to exclusive judicial review in a CID enforcement proceeding.  *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994).  Media Matters' contrary argument rests on two fundamental misreadings of *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023).

### a.  Congress's "fairly discernible" preclusive intent does not depend on a particular procedure.

Congress's preclusive intent is more than "fairly discernible" in the FTC Act's comprehensive statutory scheme, which provides specific and exclusive mechanisms for judicial review of CIDs (in an enforcement proceeding in district court, subject to exhaustion requirements) and Commission cease-and-desist orders (by petition for review in a court of appeals).  This Court and others have recognized that the FTC Act's provision for judicial review of Commission orders precludes collateral challenges.  *See, e.g.*, *Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 549 (D.C. Cir. 1992).  And the consistent precedent of the Supreme Court and lower courts confirms that the same is true for the statute's provisions governing CID enforcement, which similarly demonstrate Congress's intent to channel judicial review and bar pre-enforcement challenges (FTC.Br.19-20).

Media Matters does not and cannot contest that Supreme Court and appellate decisions have been rejecting pre-enforcement challenges to FTC and other federal agency CIDs and subpoenas for nearly a century.  In fact, Media Matters still fails to identify a single counterexample.  CID recipients cannot seek "to enjoin the investigation but must wait till the government sues to enforce a subpoena or other compulsory process in aid of the investigation, since that is the method of judicial review of FTC investigations that Congress has prescribed."  *Gen. Fin. Corp. v. FTC*, 700 F.2d 366, 368 (7th Cir. 1983) (citing *FTC v. Claire Furnace Co.*, 274 U.S.

5

160, 173-74 (1927)).  As federal courts have consistently recognized, this approach protects CID recipients (who suffer no legal penalty until the enforcement proceeding is resolved), maintains the integrity of agency investigations, and prevents the courts from being dragged into abstract disagreements.

Media Matters' response is primarily to misread *Axon*.  First, Media Matters insists that the only permissible claim-channeling scheme is to channel review to courts of appeals.  MM.Br.18-19.  But *Axon* makes clear that Congress is free to choose the forum into which it channels claims.  *See* 598 U.S. at 185 (referencing the "method Congress *typically* chooses" (emphasis added)).  Similarly, nothing in *Thunder Basin* supports Media Matters' assertion that claim-channeling requires a specific "statutory formula" (MM.Br.23-24).  The Court there analyzed only "the review scheme before [it]," 510 U.S. at 207, and did not purport to bar Congress from choosing a different procedural structure.

Unsurprisingly, this Court has applied *Thunder Basin* to channel a pre-enforcement CID challenge to an enforcement action.  *John Doe Co. v. CFPB*, 849 F.3d 1129, 1134 (D.C. Cir. 2017) (per curiam).  Media Matters describes *John Doe* as "likely non-precedential."  MM.Br.25 n.2.  That's wrong: this Court recently explained that it has "treated that published decision as binding precedent for seven years."  *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1335 (D.C. Cir. 2024) (citing cases), *cert. denied*, 145 S. Ct. 2751 (2025).  Media Matters also denigrates *John*

*Doe* by claiming it lacked "meaningful analysis" of *Thunder Basin* (MM.Br.24), but that is facially incorrect, *see* 849 F.3d at 1134, and the Court's concision illustrates only that the issue is straightforward and well-settled. In any case, it is not up to Media Matters to decide which of this Court's precedents are sufficiently well-reasoned to bind future panels. And while Media Matters complains about the "paucity of the government's precedent" (MM.Br.24), it offers *no* contrary authority of its own.[1]

Media Matters' related argument—that the parties will end up in district court anyway (MM.Br.19)—disregards this Court's governing precedent, which emphasizes that claim-channeling is *clearer* when review is in district court. *Patten v. District of Columbia*, 9 F.4th 921, 927-28 (D.C. Cir. 2021) ("the case for exclusivity here is even stronger than it was in *Thunder Basin* and *Elgin* [*v. Dep't of Treasury*, 567 U.S. 1 (2012),]" because the statutory "scheme channels claims into the district court"). The argument also flouts *John Doe*, which involved a nearly identical CID review mechanism.

---

[1] In a last-ditch effort to diminish *John Doe*, Media Matters suggests that it is at odds with *Axon* on a different issue. MM.Br.25 n.2. But nothing in *Axon* undermines this Court's reasoning and holding with respect to the question presented here: whether *Thunder Basin* channeling applies where a statutory scheme precludes pre-enforcement challenges to a CID. Nor does *Axon* otherwise support Media Matters' position. *See infra*, 10-14.

Even on its own terms, the argument wholly misses the point.  The FTC Act's structure evinces Congress's intent to constrain judicial review of a CID not to district courts generally but to *a CID enforcement proceeding* in particular.  This ensures that review occurs after the Commission has determined the scope of unresolved disputes and exercised its discretion to bring an enforcement action based on a well-developed factual record (FTC.Br.22-23).  *See* 15 U.S.C. § 57b-1(e), (h); 16 C.F.R. §§ 2.4, 2.7(k), 2.10.

Consider Media Matters' privilege claim.  Contrary to Media Matters (MM.Br.25 n.3), the district court recognized that this claim is premature and can be addressed only in an enforcement proceeding.  Dkt.43, at 14-15 ("[I]t seems odd to me to apply privilege in the abstract at this stage. … [W]hy wouldn't it make sense to wait for an enforcement action?").  Media Matters' theory would therefore lead to dual-track litigation, which even Media Matters has previously conceded is undesirable.  Stay Opp'n 22.

The only way to avoid this counterproductive outcome is to wait for the Commission to complete its administrative process by assessing whether any disputes between the parties remain and, if so, whether they justify bringing an enforcement action (which may not be warranted, for example, if the Commission obtains all the necessary information from another CID recipient).  It is only by

overlooking that crucial step in the administrative proceeding that Media Matters can assert (MM.Br.24) that the FTC administrative process has run its course.[2]

Media Matters responds by suggesting that the FTC could seek to consolidate an enforcement action before a single district court (MM.Br.25). But nothing in the FTC Act suggests that Congress intended to create a proliferation of injunction and consolidation proceedings, rather than simply directing all CID challenges to enforcement proceedings, where they have traditionally been considered. Media Matters also baselessly accuses the FTC of attempting to engage in forum shopping (MM.Br.25) but offers no reason to assume the FTC could bring an enforcement action in any other venue. *See* 15 U.S.C. § 57b-1(e). Again, Congress was properly concerned with the *posture* in which the claims would be considered—that is, an enforcement action with narrowed issues and well-developed facts—not merely the forum or timing.

> ### b. Media Matters' claims are precisely "of the type" that Congress channeled to the statutory review mechanism.

**1. Meaningful judicial review.** Media Matters doesn't contest that federal agency CIDs have always and only been reviewed in federal court enforcement actions, and that this traditional mechanism provides meaningful judicial review

---

[2] In addition, it is self-contradictory for Media Matters to rely on the purported completion of this process when it declined to assert its retaliation claim in the PTQ and maintains that it was not required to do so, *see infra*, 16-17.

(FTC.Br.26). Nor does it dispute that *Thunder Basin* and *Axon* themselves presume that delayed review may allow ongoing harm (FTC.Br.28). Instead, it advances a false syllogism: (1) *Axon* held that some injuries—such as being subjected to administrative proceedings by an unconstitutional decisionmaker—are reviewable through collateral litigation, 598 U.S. at 191; (2) this Court held that Media Matters suffered ongoing injury from a state CID, *Media Matters for America v. Paxton*, 138 F.4th 563, 583 (D.C. Cir. 2025); therefore (3) its claimed ongoing injury is immediately reviewable (MM.Br.21-22). This argument fails because, again, Media Matters misreads *Axon*.

*Axon* emphasizes that only in exceptional cases involving *structural* challenges does ongoing harm justify immediate review. 598 U.S. at 189 ("The challenges here … [are to] the structure or very existence of an agency."). Media Matters' claim doesn't meet that requirement. It neither challenges the FTC's structure nor asserts any unique injuries, merely identifying harms that could occur to *any* CID recipient, such as counterparties' reluctance to cooperate with Media Matters (MM.Br.21). *Axon*'s holding was explicitly limited to "structural constitutional claims" that are "fundamental, even existential." 598 U.S. at 191, 180. Accordingly, *Axon*'s narrow exception to *Thunder Basin* does not extend to challenges to "any specific substantive decision" of an agency or to any

10

"commonplace procedures agencies use to make" decisions.  598 U.S. at 189.  That is precisely the type of challenge Media Matters advances here.

That Media Matters raises a retaliation claim makes no difference.  Courts have frequently applied *Thunder Basin* claim-channeling in First Amendment cases (FTC.Br.30 (citing cases)).[3]  And while none of these cases involve a retaliatory *investigation* claim (MM.Br. 28)—perhaps because it is not clear such claims even exist, as discussed below—the Eleventh Circuit explicitly rejected the argument that a First Amendment retaliation claim should be "treated differently than other constitutional claims under *Thunder Basin*."  *LabMD, Inc. v. FTC*, 776 F.3d 1275, 1280 (11th Cir. 2015) (quoted in FTC.Br.30).

Media Matters also misunderstands why the state CID challenge in *Paxton* was subject to different analysis (MM.Br.26).  In that case, there was no "federal agency action," *Axon*, 598 U.S. at 185, and *Thunder Basin* simply did not apply.  Accordingly, the *Paxton* court had no occasion to consider whether Media Matters had raised a structural challenge that satisfied the requirements of *Axon*.  Instead, it considered only whether Media Matters was suffering ongoing harm.  138 F.4th at 583.  Such ongoing harm might be sufficient to satisfy Article III standing and

---

[3] While prior restraints were not at issue in *National Taxpayers Union v. SSA*, 376 F.3d 239 (4th Cir. 2004), that case (like many others) does apply *Thunder Basin* preclusion to First Amendment claims.

11

ripeness requirements, but (as explained above) it is at most the beginning, rather than the end, of the *Thunder Basin* inquiry.

Moreover, Congress had good reason to channel issues about federal agency CIDs to enforcement proceedings while permitting Section 1983 suits to challenge state CIDs.  Doing so ensures that in both situations recipients can present their constitutional claims in a federal forum before legal penalties accrue.  *See* Br. U.S. Amicus Curiae at 25, *First Choice Women's Res. Ctrs., Inc. v. Platkin*, No. 24-781 (U.S. Aug. 28, 2025).

**2. Collateralism.**  Under *Thunder Basin*, a claim is not of the type Congress intended to be subject to channeling if it is "wholly collateral to a statute's review provisions."  510 U.S. at 212 (cleaned up).  As we have explained (FTC.Br.26), Media Matters' constitutional claims are in no way collateral to the FTC Act's provisions requiring judicial review in an enforcement proceeding.  For example, courts routinely address constitutional issues in CID enforcement actions.  *See, e.g.*, *Seila Law LLC v. CFPB*, 591 U.S. 197, 208-09 (2020).[4]  Media Matters can't (and

---

[4] As the district court's opinion illustrates, Media Matters' retaliation claim implicates other issues that are also routinely reviewed in enforcement proceedings: the CID's validity under the FTC Act, the adequacy of notice, the CID's scope and breadth, and the relevance and burden of various specifications.  App.251-53; *see also FTC v. XCast Labs, Inc.*, No. 21-1026, 2021 WL 6297885, at *4-5 (C.D. Cal. Dec. 9, 2021); *FTC v. Mt. Olympus Fin., LLC*, 211 F.3d 1278 (Table), 2000 WL 419825, at *1-2 (10th Cir. 2000); *compare Axon*, 598 U.S. at 193 (claims were

doesn't) dispute any of this. Instead, it ignores the *Thunder Basin* inquiry—whether the claim is "wholly collateral to a statute's review provisions," 510 U.S. at 212 (cleaned up)—and poses a different question altogether, asking (MM.Br.22) whether the claims are "collateral to *agency proceedings*" (emphasis added). Applying that new test, Media Matters suggests that its claim is now necessarily collateral because the FTC has resolved the PTQ. But even if this were the correct test (and it is not), the relevant agency proceedings are not limited to the PTQ decision: the Commission has not yet decided whether to bring an enforcement action and, if so, what documents or other information to seek.

3. **Competence.** *Axon* asks whether a claim is "outside the agency's expertise." 598 U.S. at 186 (quotation omitted). Media Matters doesn't dispute that the Commission possesses the authority and experience to decide constitutional objections to CIDs (FTC.Br.27, 34 & n.8). Media Matters' retaliation claim is therefore "intertwined with or embedded in" the FTC's expertise, *Axon*, 598 U.S. at 195. It is irrelevant that the PTQ process is complete (MM.Br.23); as just noted, the Commission process continues in deciding whether and when to bring an enforcement action in federal court.

---

collateral because they did "not relate to the subject of the enforcement actions" or to "procedural or evidentiary matters").

In any event, the agency expertise inquiry is not demanding.  In *Thunder Basin*, the Court found this factor satisfied after noting that the agency had "addressed constitutional questions in previous enforcement proceedings" and the "statutory and constitutional claims [could] be meaningfully addressed" in a subsequent proceeding in federal court.  *Thunder Basin*, 510 U.S. at 215.  Both considerations are equally true here.

### 2.    Media Matters lacks an implied equitable cause of action.

We demonstrated (FTC.Br.31) that Media Matters lacks an equitable cause of action because it has an adequate remedy at law.  *See Reisman v. Caplin*, 375 U.S. 440, 443 (1964); *Claire Furnace*, 274 U.S. at 174.  Media Matters' counterarguments are wrong.

First, Media Matters argues (at 31) that because it "faces ongoing First Amendment harms" and "lacks an adequate legal remedy later," it is entitled to an implied equitable cause of action.  But *Reisman*, *Claire Furnace*, and their progeny consistently hold that pre-enforcement CID and subpoena challenges must be dismissed "for want of equity."  *Reisman*, 375 U.S. at 443; *Wearly v. FTC*, 616 F.2d 662, 665 (3d Cir. 1980).[5]  The FTC Act provides Media Matters an adequate remedy

---

[5] Media Matters (at 28) misunderstands the decisions in *Wearly* and *Belle Fourche Pipeline Co. v. United States*, 751 F.2d 332 (10th Cir. 1984).  *Belle Fourche* affirmatively recognized that there is no cognizable injury where a CID recipient has

at law: a district court will address any proper objection in an enforcement action and Media Matters faces no legal penalty unless the court orders enforcement (FTC.Br.22).

Second, Media Matters incorrectly suggests that the FTC's authorities "say nothing about a plaintiff's ability to enforce a *constitutional* right" (MM.Br.32). On the contrary: the Supreme Court held that the "ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity": it is "a judge-made remedy," not based on an "implied right of action contained in the" Constitution. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015); *see also, e.g.*, *Global Health Council v. Trump*, 153 F.4th 1, 15-16 (D.C. Cir. 2025). Like any equitable remedy, an injunction is available only when legal remedies are inadequate. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959). And a CID enforcement action under the FTC Act adequately protects Media Matters' right to object to the CID.

*Armstrong* also held that the right to seek relief "in equity" for alleged constitutional violations "is subject to express and implied statutory limitations." 575 U.S. at 327. And *Alexander v. Sandoval* confirms that "[t]he express provision

---

an opportunity to present defenses in an enforcement proceeding. 751 F.2d at 335. And *Wearly* observed that a pre-enforcement challenge to a CID also cannot satisfy the finality requirement of the *Abbott Laboratories* test, which Media Matters does not even mention. 616 F.2d at 668.

of one method of enforcing a substantive rule suggests that Congress intended to preclude others." 532 U.S. 275, 290 (2001). Here, Congress provided a method of review (a CID enforcement action) and thereby precluded others.

### 3. Media Matters failed to exhaust the retaliation issue.

Media Matters does not contest that the FTC Act and its regulations expressly require exhaustion (FTC.Br.32-33). Nor does it even mention the cases confirming that challenges to FTC investigations are subject to an exhaustion requirement (FTC.Br.34-35). *See also FTC v. Complete Merch. Sols., LLC*, No. 2:19-cv-00996, 2020 WL 2059847, at *8 (D. Utah Apr. 28, 2020) (citing additional cases). Media Matters thus cannot dispute that it had a legal obligation to exhaust this claim and has failed to do so.

Media Matters also scarcely engages with the implied exhaustion factors of *Carr v. Saul*, 593 U.S. 83, 88-89, 92-93 (2021). FTC.Br.33. It does not dispute that the PTQ process is adversarial. It tries to recast the second factor as focusing on the agency's "technical expertise" (MM.Br.34) rather than whether a challenge is "structural," *Carr*, 593 U.S. at 92. That's wrong, and in any event the factor is satisfied either way. FTC.Br.34; *see supra* at 13-14. Finally, Media Matters does not contend that exhaustion would have been futile.[6] Nor could it, since another CID

---

[6] Media Matters gestures at a bias argument (MM.Br. 34), but makes no effort to develop it (or explain why it did not attempt to disqualify any purportedly biased Commissioners, 16 C.F.R. § 4.17(b)(1)).

16

recipient *did* raise a retaliation claim before the Commission. PTQ, *NewsGuard Techs., Inc. v. FTC*, No. 1:26-cv-0353, ECF No. 26-2, at 7-14 (FTC Jan. 16, 2026).

As to whether this Court should reach the issue: Media Matters does not dispute that the Court is free to do so, nor that resolving the issue now will be more efficient than litigating it anew in the merits proceeding. It asserts that exhaustion might "implicate[] factual questions" (MM.Br.33), but does not identify any genuine factual dispute. Nor does Media Matters explain why this panel should shy away from this issue when the stay panel (incorrectly) addressed it *sua sponte*.[7] As a last-ditch effort, Media Matters claims that exhaustion was unnecessary because the FTC was aware of its lawsuit (MM.Br.34), but it cites no authority supporting that novel approach to exhaustion.

## B. Media Matters Is Not Likely to Prevail on Its First Amendment Retaliation Claim.

### 1. Media Matters cannot demonstrate a causal connection between its speech and the CID.

Media Matters must at least show that its speech was a but-for cause of the CID. *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019). It has not come close to doing

---

[7] The stay panel did not merely "describe the fact that Media Matters had filed a petition to quash" (MM.Br.33). The majority rejected the FTC's *Thunder Basin* analysis on the (mistaken) ground that "the agency was already afforded an opportunity to consider the constitutional harms caused by its demand." 2025 WL 2988966, at *5. Notably, Media Matters does not dispute that, but for this error, the panel might well have granted a stay. FTC.Br.35 n.9.

so, particularly under the presumption of regularity, which is at its apex here. FTC.Br.37-38.[8]

### a. The undisputed evidence demonstrates that the Commission acted for nonretaliatory reasons.

As we explained, FTC.Br.38-40, the Commission's actions here clearly demonstrate a nonretaliatory purpose: to investigate anticompetitive, collusive, and unlawful boycotts in the advertising industry. As one part of that investigation, the Commission issued seventeen still-outstanding CIDs to a variety of entities, including advertising trade associations, policy/advocacy groups, and brand safety/suitability rating organizations. The diversity of CID recipients—including entities with no conceivable connection to Media Matters' reporting—confirms that the CID to Media Matters was neither unique nor retaliatory and precludes any inference that the investigation targeted Media Matters for its speech. Indeed, Media Matters does not contend that *all* of those CIDs were retaliation for a 2023 article in which Media Matters criticized Elon Musk.

---

[8] Media Matters recycles (at 41) its incorrect contention that the presumption is forfeited, but the FTC briefing below "appl[ied] [Judge Mehta's causation] framework," (Dkt.27 at 39), which properly incorporated the presumption of regularity. *Media Matters for Am. v. Bailey*, No. 24-cv-147, 2024 WL 3924573, at *18 (D.D.C. Aug. 23, 2024); *see* Dkt.27 at 44 (discussing the absence of "unorthodox conduct" by the FTC). At any rate, "parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). This Court, like the stay panel, should reject the forfeiture argument and apply the correct legal standard. 2025 WL 2988966, at *6, *9.

The stay panel majority understood that Media Matters had to differentiate itself from the other CID recipients. It relied on the unique facts emphasized by Media Matters, including the putative links to the 2023 article and earlier litigation involving state Attorneys General in Texas and Missouri. 2025 WL 2988966, at *9 ("unusual and unprecedented array of facts"); *id.* at *11 ("unique factual circumstances"). And it addressed the other CIDs by assuming that the Media Matters CID was uniquely broad, making clear that the Commission could demonstrate nonretaliatory purpose by showing that "the scope and sweep of [other CIDs] matches the one given to Media Matters." *Id.* at *9. But there was never any basis for the assumption—which Media Matters itself never even advanced—that the Media Matters CID was uniquely broad. And public information now shows that assumption is false: two other CIDs are at least as broad as the one issued to Media Matters.[9]

Media Matters therefore can no longer defend the theory that persuaded both the district court and the stay panel: that the purported retaliation was linked to the 2023 article and the earlier litigation. MM.Br.44 n.7 (declining to take a position "[w]hether the FTC targeted Media Matters for the 2023 article about X … or for

---

[9] *See* FTC.Br.40 (describing the CID issued to Global Disinformation Index); *NewsGuard Techs., Inc. v. FTC*, No. 1:26-cv-0353, ECF No. 21, at 25 (D.D.C. Feb. 26, 2026) (asserting that the CIDs are "largely carbon copies").

19

some combination of that article and other reporting"). Instead, Media Matters now contends that the entire investigation was motivated by ideological disagreement with views on "the left." MM.Br.50; *see also id.* at 45 (emphasizing partisan affiliation of current and former Commissioners).

This new theory fails for multiple reasons. As Media Matters itself acknowledges, it is speculative. MM.Br.49-50 ("Media Matters takes no position" on the GDI matter). Indeed, Media Matters has not even *alleged* that all of the CIDs were ideologically motivated. Furthermore, the new theory puts Media Matters in direct conflict with the stay majority, which focused on the purportedly unique circumstances involving Media Matters. And most fundamentally, the new theory does not articulate a First Amendment retaliation claim at all because it makes no attempt to connect the FTC's action to any specific First Amendment conduct. It more closely resembles a viewpoint discrimination or selective prosecution claim, neither of which Media Matters pleaded and neither of which could support a preliminary injunction here.[10]

---

[10] A viewpoint discrimination claim would most obviously fail because the CID in no way restricts or regulates the speech of Media Matters. *See, e.g.*, *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828-29 (1995) (citing cases). And a selective prosecution claim would also fail for numerous reasons, as already explained. FTC.Br.46 n.13. Certainly, Media Matters cannot satisfy the demanding burden of identifying similarly situated entities simply by asserting that others called for advertising boycotts (without any suggestion that such calls were in any way connected to anticompetitive collusion). MM.Br. 44 n.7.

### b.   Media Matters' purported evidence of retaliation fails as a matter of law.

The evidence of the Commission's nonretaliatory intent suffices to reject Media Matters' claim.  But the purported evidence of retaliation is also categorically inadequate, as we explained.  FTC.Br.41-50.

Media Matters is wrong to say (at 40) that we ask this Court to weigh evidence in isolation.  All of Media Matters' evidence fails as a matter of law.  This is true even without the presumption of regularity; applying the presumption only reinforces that conclusion.

**1.   Timing.**  Our opening brief (at 41-44) explained that the 18-month gap between the 2023 Media Matters article and the FTC CID precludes any inference that the two were causally related based on timing.  The only response (MM.Br.42) is that Chairman Ferguson purportedly acted "promptly" once he became Chairman in January 2025.  But the four-month period that elapsed before the CID was issued is itself too long to support causation.  FTC.Br.43.  And more fundamentally, any prompt action is equally consistent with what actually happened: Chairman Ferguson treated this important antitrust investigation as a high priority.  *Id.*

Media Matters now proffers three additional events, which similarly fall short. It points to Missouri's closing of its investigation in February 2025, but that investigation really ended in August 2024 when it was enjoined by a federal court, *see Bailey*, 2024 WL 3924573, at *19, and even the February date would leave an

21

overlong three-month gap. *See* FTC.Br.41. The April 2025 injunction of Musk's litigation also does not help Media Matters because Media Matters fails to allege any connection between Musk and the FTC.[11] And this Court's affirmance of the injunction against Texas occurred *after* the FTC's CID was issued.

At any rate, Media Matters' timing arguments only highlight the tension between its two retaliation theories: the original theory that the Commission retaliated for the 2023 article about Musk, and the current theory that the entire investigation is ideologically retaliatory. These timing arguments cannot support the *new* theory because there would be no reason for the timing of a wholly retaliatory investigation to be pegged to Media Matters-specific events. But they also cannot support the *original* theory because at least two other advertising boycott CIDs were issued on the same day, *see supra* at 19 n.9, and there is no suggestion that those CIDs were issued in response to Media Matters' speech. Once again, Media Matters is forced to equivocate between the two theories because neither can survive on its own.

**2. Public Statements.** As we explained (FTC.Br.44-45), Media Matters cannot identify any statements by Chairman Ferguson that even mention Media

---

[11] While Media Matters rejects (at 43) the proposition that the actions of third parties (like Musk) can be relevant only if they demonstrate coordination, *see* FTC.Br.42, it still has not identified a single case where retaliatory acts of distinct entities were aggregated *without* such a showing.

Matters or its 2023 article.  The only response (at 43) is to describe the Chairman's comments as "nakedly partisan."   But a claim of First Amendment retaliation requires a "causal link" to specific protected speech that was assertedly the basis for retaliation.  *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016) (cleaned up).  As noted above, Media Matters' generic accusations of partisanship do not suffice. *Supra* at 20 & n.10.

Media Matters similarly fails to refute the point that statements by others, not involved in the decision-making process, do not provide the required connection between protected speech and government action (FTC.Br.46-48).  Media Matters (at 46) instead attacks the strawman argument, never advanced by the FTC, that "a non-decisionmaker's statements are per se irrelevant."  It also cites cases from other areas of the law, but still cannot identify a First Amendment retaliation claim upheld on the basis of a claimed connection to those not alleged to have been involved in the decision.[12]

Finally, the CID here was authorized and then ratified by the Commission as a whole, and Media Matters has identified no reason to believe that any other Commissioner acted in any way to retaliate against Media Matters for the 2023

---

[12] Media Matters' unadorned speculation about those individuals' conceivable involvement (MM.Br.46 n.9) cannot carry its burden for preliminary injunction purposes.

23

article or any protected expression. FTC.Br.44. Instead, Media Matters wrongly dismisses the full Commission's vote as "irrelevant," and expresses hope that discovery might turn up evidence of bias that Media Matters has failed to proffer in support of its preliminary injunction motion. MM.Br.45.

**3. Scope of the CID.** Media Matters' attacks on the scope of the CID also fail, as the CID's scope is standard for FTC investigations. FTC.Br. 40.[13] It cannot dispute that the CID seeks information relevant to the FTC's ongoing investigation into advertising boycotts that violate the antitrust laws. Instead, Media Matters second-guesses the Commission's need for financial documents and materials from prior litigation, but makes no effort to engage with evidence and caselaw showing that such requests are justified in FTC investigations (FTC.Br.48). Likewise, the CID's description of the nature of the investigation was sufficient and in any event irrelevant to the constitutional claims at issue here (FTC.Br.49).

Ultimately, Media Matters demands something to which it is not entitled: a detailed explanation of the FTC's theory underlying its investigation, and a specific justification for why Media Matters was selected as a CID recipient. But a law enforcement agency need not justify, to the recipient's satisfaction, the reasons for

---

[13] The FTC did not waive this argument (MM.Br.47). *See* Dkt.27 at 46-49.

an investigation.[14]  *See, e.g.*, *FTC v. Texaco, Inc.*, 555 F.2d 862, 874 (D.C. Cir. 1977) (en banc) ("an investigating agency is under no obligation to propound a narrowly focused theory of a *possible* future case" when enforcing a subpoena or CID).[15]

Media Matters asserts that participating in a collusive group boycott is protected by the First Amendment.  MM.Br.38-39 (citing *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 911 (1982)).  But Media Matters has conceded that this issue is, at best, "unsettled."  Dkt.22-1 at 34; FTC.Br.48 n.15.  Nor does Media Matters dispute that the FTC "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not."  *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950).

### 2.    Media Matters also cannot demonstrate that the CID had the requisite chilling effect.

Media Matters fails to establish that a retaliatory investigation claim is even cognizable.  *See* FTC.Br.51-52.  This is enough by itself to deny a preliminary injunction.

---

[14] Media Matters suggests that the FTC should have sought to provide confidential information about the need for the CID to the district court *in camera*.  MM.Br.49. But Media Matters fails to establish that the FTC needed to provide more information at all, much less that it was required to affirmatively invoke an unusual process to do so.

[15] Media Matters fails to respond to the FTC's arguments as to why no negative inferences can be drawn from the Commission's statement of the nature of its investigation and the later amendment of that statement.  FTC.Br.49.  Instead, Media Matters offers only a naked plea for deference to the district court.  MM.Br.47.

The Supreme Court in *Hartman v. Moore* made clear that it was leaving open the broad question whether a retaliatory investigation should *ever* be recognized as "a distinct constitutional violation"—without any limitation to cases seeking damages. 547 U.S. 250, 262 n.9 (2006). And the Eleventh Circuit in *Rehberg v. Paulk* stated flatly that a retaliatory investigation claim "does not implicate a federal constitutional right"— wholly apart from the qualified immunity standard. 611 F.3d 828, 850 n.24 (11th Cir. 2010), *aff'd on other grounds*, 566 U.S. 356 (2012).

The cases Media Matters cites (MM.Br.51-52) are not to the contrary. *Reporters Committee* and *Paxton* provide no support (FTC.Br.51 & n.16). *National Rifle Ass'n of America v. Vullo*, 602 U.S. 175 (2024), said nothing about the viability of a retaliatory investigation claim. And *White v. Lee*, 227 F.3d 1214, 1220, 1233 (9th Cir. 2000), was not a challenge to the initiation of an investigation but to the government's conduct during that investigation, which included a litany of threatening and defamatory actions not alleged here. *Accord Moore v. Garnand*, 83 F.4th 743, 752 (9th Cir. 2023) (explaining that *White* did not "h[o]ld that a retaliatory investigation by itself was unconstitutional"). *Anderson v. Davila* likewise challenged conduct during an investigation (surveillance of the plaintiff and his

26

lawyer), not the retaliatory launching of an investigation itself.  125 F.3d 148 (3d

Cir. 1997).[16]

   In short, the cases cited by Media Matters only *confirm* the Commission's

view that, if a retaliatory investigation claim is ever viable, it could arise only in

extraordinary circumstances not present here.  And by the same token, it would only

be in extraordinary circumstances that a CID could be "sufficient to deter a person

of ordinary firmness in [its] position from speaking again."  *Aref*, 833 F.3d at 258

(cleaned up).  However, as already demonstrated (FTC.Br.53), Media Matters has

not alleged any unusual injury distinct from every federal agency CID.

## II.    EQUITABLE FACTORS SUPPORT REVERSAL.

   The equities also favor the FTC.  Media Matters does not dispute (MM.Br.56)

that its claimed harms turn on the merits of its First Amendment claims; because

those claims fail, there is no irreparable injury.  There is likewise no dispute that the

government and the public suffer when an injunction prevents investigation into

potentially unlawful conduct.

   And the harm to the public and the government reaches far beyond this case.

Media Matters does not seriously contest that adopting its theories would be

---

   [16] Contrary to Media Matters' assertion (MM.Br.52), the government in *First Choice Women's Resource Centers, Inc. v. Platkin*, No. 24-781 (U.S.), addressed only whether the plaintiff's injury was sufficient to demonstrate standing under Article III, not the viability of retaliatory investigation claims.

profoundly disruptive. It offers only a cursory reference to "[o]ther doctrines" which, for reasons it does not explain, would purportedly "prevent most regulated parties from challenging a CID." MM.Br.30. In reality, Media Matters' theory would allow *any* recipient of an agency subpoena to launch a pre-enforcement challenge simply by asserting a First Amendment claim, while also making such claims exceedingly easy to win. This is a blueprint for seriously disrupting almost any federal agency investigation, with severe consequences for both the agencies themselves and the public that they protect.

## CONCLUSION

This Court should reverse the preliminary injunction.

Respectfully submitted,

Of Counsel:

LUCAS CROSLOW
*General Counsel*

DANIEL GUARNERA
*Director*

ALEX POTAPOV
*Deputy General Counsel*

KELSE MOEN
*Deputy Director*

/s/ H. Thomas Byron III
H. THOMAS BYRON III
*Deputy General Counsel*

GEOFFREY GREEN
*Assistant Director*

STEPHEN T. FAIRCHILD
ROBERT E. ZUVER, JR.
ETHAN D. BECK
*Attorneys*

BUREAU OF COMPETITION

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2527
hbyron@ftc.gov

March 2026

29

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1), it contains 6485 words. The brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman typeface.

March 13, 2026                          /s/ H. Thomas Byron III
                                        H. Thomas Byron III