**No. 25-5302**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

MEDIA MATTERS FOR AMERICA,
*Plaintiff-Appellee*,
v.
FEDERAL TRADE COMMISSION, *et al.*,
*Defendants-Appellants*.

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

**EMERGENCY MOTION FOR ADMINISTRATIVE STAY
AND FOR STAY PENDING APPEAL**

———————————

DANIEL GUARNERA
*Director*

KELSE MOEN
*Deputy Director*

GEOFFREY GREEN
*Assistant Director*

BUREAU OF COMPETITION

LUCAS CROSLOW
  *General Counsel*

ALEX POTAPOV
  *Deputy General Counsel*

H. THOMAS BYRON III
  *Deputy General Counsel*
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue NW
Washington, D.C. 20580
(202) 326-2527
*hbyron@ftc.gov*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ..................................................................................1

STATEMENT ........................................................................................2

ARGUMENT .........................................................................................6

    I.    The FTC Is Likely To Prevail On The Merits......................................6

        A.    Courts lack the power to enjoin a federal agency's law-
               enforcement investigation. ...........................................................6

        B.    Plaintiff's claims fail on the merits. ..........................................12

    II.    The Equitable Factors Favor A Stay. ..................................................20

CONCLUSION ...................................................................................23


CERTIFICATE OF COMPLIANCE......................................................24

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Perez*,
   585 U.S. 579 (2018)..........................................................................14

*Am. Motors Corp. v. FTC*,
   601 F.2d 1329 (6th Cir. 1979) ...............................................................8

*Anheuser-Busch, Inc. v. FTC*,
   359 F.2d 487 (8th Cir. 1966) .................................................................8

*Aref v. Lynch*,
   833 F.3d 242 (D.C. Cir. 2016)..............................................................13

*Armstrong v. Exceptional Child Ctr, Inc.*,
   575 U.S. 320 (2015)...........................................................................12

*Atl. Richfield Co. v. FTC*,
   546 F.2d 646 (5th Cir. 1977) .................................................................8

*Axon Enter., Inc. v. FTC*,
   598 U.S. 175 (2023)....................................................... 7, 9, 10, 11

*Belle Fourche Pipeline Co. v. United States*,
   751 F.2d 332 (10th Cir. 1984) ...............................................................8

*Blue Ribbon Quality Meats, Inc. v. FTC*,
   560 F.2d 874 (8th Cir. 1977) .................................................................8

*Cones v. Shalala*,
   199 F.3d 512 (D.C. Cir. 2000)..............................................................16

*Constantine v. Rectors & Visitors of George Mason Univ.*,
   411 F.3d 474 (4th Cir. 2005) ...............................................................17

*Elgin v. Dep't of Treasury*,
   567 U.S. 1(2012)...............................................................................12

*FTC v. Claire Furnace Co.*,
   274 U.S. 160(1927)............................................................ 7, 8, 9, 21

*Gen. Fin. Corp. v. FTC*,
   700 F.2d 366 (7th Cir. 1983) ..........................................................8, 21

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
   527 U.S. 308 (1999)...........................................................................12

ii

*Hartman v. Moore,*
    547 U.S. 250 (2006)................................................................. 13, 14

*INS v. Legalization Assistance Project of L.A. Cnty. Fed'n of Lab.,*
    510 U.S. 1301 (1993)....................................................................20

*Maryland v. King,*
    567 U.S. 1301 (2012)....................................................................20

*Media Matters for Am. v. Bailey,*
    No. 24-cv-147, 2024 WL 3924573 (D.D.C. Aug. 23, 2024)................. 14, 15, 17

*Media Matters for Am. v. Paxton,*
    138 F.4th 563 (D.C. Cir. 2025)............................................. 10, 13, 15

*Nixon v. Fitzgerald,*
    457 U.S. 731 (1982)....................................................................16

*Nken v. Holder,* 556 U.S. 418 (2009) ...........................................................6

*NTEU v. Vought,*
    ___ F.4th ___, No. 25-5091, 2025 WL 2371608

(D.C. Cir. Aug. 15, 2025) ..................................................... 6-7, 10, 11

*Ramos v. Wolf,*
    975 F.3d 872 (9th Cir. 2020) .........................................................16

*Rehberg v. Paulk,*
    611 F.3d 828(11th Cir. 2010) ........................................................13

*Reisman v. Caplin,*
    375 U.S. 440 (1964)....................................................................12

*Standard Oil of Cal.,*
    449 U.S. 232 (1980)................................................................. 11, 21

*Staub v. Proctor Hosp.,*
    562 U.S. 411 (2011)....................................................................16

*Thunder Basin Coal Co. v. Reich,*
    510 U.S. 200 (1994)............................................................ 7, 9, 10, 12

*Trump v. CASA, Inc.,*
    145 S. Ct. 2540 (2025)..................................................................20

*Trump v. Hawaii,*
    585 U.S. 667 (2018)................................................................. 14, 15

*United States v. Chemical Found., Inc.*,
    272 U.S. 1 (1926)...................................................................................14

*United States v. Fokker Servs. B.V.*,
    818 F.3d 733 (D.C. Cir. 2016)..............................................................14

*United States* v. *Morton Salt Co.*,
    338 U.S. 632 (1950)............................................................................3, 7

*United States v. Nixon*,
    418 U.S. 683 (1974)................................................................................16

*Wearly v. FTC*,
    616 F.2d 662 (3d Cir. 1980) ...................................................................8

**Statutes**

15 U.S.C. § 45 .............................................................................................2

15 U.S.C. § 57b-1................................................................... 3, 7, 10, 19

**Regulations**

16 C.F.R. § 2.4 ............................................................................................3

**Other Authorities**

Benjamin Weingarten, Statement for the Record, U.S. Senate Committee on the
    Judiciary Subcommittee on the Constitution, "The Censorship Industrial
    Complex," (Mar. 25, 2025)...................................................................19

Concurring Statement of Commissioner Andrew N. Ferguson, *FTC v. 1661, Inc.*
    *d/b/a GOAT*, FTC No. 2223016 (Dec. 2, 2024) ....................................3

FTC Press Release, *FTC Prevents Anticompetitive Coordination in Global*
    *Advertising Merger* (June 23, 2025).......................................................3

Kate Conger, Kenneth P. Vogel and Theodore Schleifer, *Regulators Are*
    *Investigating Whether Media Matters Colluded With Advertisers* (The New York
    Times May 22, 2025)..............................................................................22

Media Matters for America, *Tell Advertisers: Drop Fox* ........................19

Order Denying Petition to Quash Civil Investigative Demand, *In the Matter of*
    *Civil Investigative Demand to Media Matters for America Dated May 20, 2025*,
    FTC Dkt. No. 251-0061 (July 25, 2025) .................................. 4, 14, 18

Senator Eric Schmitt, "The Censorship Industrial Complex," Hearing of the U.S.
    Senate Committee on the Judiciary Subcommittee on the Constitution (Mar. 25,
    2025) .......................................................................................................19

# INTRODUCTION

The district court entered an unprecedented preliminary injunction precluding the FTC from enforcing or implementing its civil investigative demand (CID) directed to plaintiff Media Matters for America. The injunction prevents the Federal Trade Commission (FTC) from taking even basic steps to investigate Media Matters' information about, or involvement in, potentially unlawful advertiser boycotts. But the reasoning that supported the injunction sweeps far more broadly than one investigation or one agency. If the district court's novel theory of First Amendment retaliation is correct, then civil and criminal investigations undertaken by dozens of federal agencies could be called into question and subject to judicial delay and second-guessing. The courts would be drawn into endless disputes over the legitimacy of early-stage law enforcement investigations before investigators have had the opportunity to develop their reasonable suspicions into full-fledged evidence and allegations. And investigators would be faced with the impossible choice either to risk having their investigation enjoined or to reveal their confidential evidence and theories.

The district court's ruling rests on two fundamental errors. First, it disregarded Congress's decision to foreclose pre-enforcement challenges to FTC CIDs, and to require objections to CIDs to be litigated in enforcement actions brought by the agency. Second, it erred as a matter of law by inferring a retaliatory motive from a

mishmash of impermissible inferences offered by Media Matters (such as imputing to the FTC Chairman the views of an individual who is not even in government). The combined force of these errors severely undercuts the paramount public interest in vigorous law enforcement investigations, which has long been protected by both Congress and the courts.

The immediate and irreparable harm to the FTC's ad boycott investigation calls for urgent intervention by this Court, even before considering the nationwide harm that this ruling threatens to impose on the Executive Branch's investigative powers. The FTC is likely to succeed on the merits of its appeal because the injunction is inconsistent with the FTC Act, decades of administrative and First Amendment case law, and fundamental limits on federal courts. And the balance of equities and public interest strongly favor a stay while this Court considers the FTC's appeal.

The Court should therefore stay the preliminary injunction pending appeal. It should also enter an administrative stay while it considers this motion. Defendants respectfully request a decision on this stay motion no later than Tuesday, September 9, to avoid further hampering the FTC's investigation and to permit the government to seek relief in the Supreme Court if necessary.

## STATEMENT

1.  Congress "empowered and directed" the FTC "to prevent" "unfair methods of competition in or affecting commerce." 15 U.S.C. § 45(a). The FTC Act

thus gives the Commission the authority to issue civil investigative demands (CIDs)

to "any person" who may have "any information" relevant to potential violations, *id.*

§ 57b-1, and the FTC may exercise its investigative authority "merely on suspicion

that the law is being violated, or even just because it wants assurance that it is not,"

*United States* v. *Morton Salt Co.*, 338 U.S. 632, 642-43 (1950); *see* 15 U.S.C. § 57b-

1(c)(1). CID recipients may petition the Commission to set aside or modify the CID.

15 U.S.C. § 57b-1(f). They may also meet and confer with FTC staff to informally

discuss concerns about a CID. 16 C.F.R. § 2.4.

A CID recipient does not incur any immediate penalties for failing to respond

to a CID. Instead, Congress has provided a mechanism for judicial review prior to

any penalties by permitting the FTC to bring an action to enforce the CID in district

court, which is subject to appeal. 15 U.S.C. § 57b-1(e), (h). That enforcement action

includes review of any constitutional challenges to the CID.

2.      Chairman Ferguson and the FTC have expressed concern about, and

taken action to prevent, potential anticompetitive collusion in the digital advertising

industry to withhold advertising from certain disfavored media.[1]  Such concerted

action would likely violate the federal antitrust laws and harm the public by reducing

---

[1] *See, e.g.*, FTC Press Release, *FTC Prevents Anticompetitive Coordination in Global Advertising Merger* (June 23, 2025); Concurring Statement of Commissioner Andrew N. Ferguson, *FTC v. 1661, Inc. d/b/a GOAT*, FTC No. 2223016 (Dec. 2, 2024).

competition in markets for advertising purchasing and other advertising-related products or services, which could in turn reduce consumer choice in content, degrade the quality of advertisements, and ultimately stifle debate on matters of public importance. The Commission therefore opened a broad investigation into potential boycotts in digital advertising against certain media (that is, concerted refusals to deal with those media) by using agreed-upon definitions of subjective terms such as "misinformation" or "brand safety." In furtherance of this investigation, the Commission issued CIDs to seventeen entities that include ad agencies, advertising trade associations, brand safety and suitability rating organizations, and policy and advocacy groups focused on digital advertising.[2]

3.      Plaintiff Media Matters for America received one of the seventeen outstanding CIDs in this investigation. Media Matters filed a petition with the Commission seeking to quash the CID. PTQ Order at 13. The FTC rejected plaintiff's arguments and denied the petition.

Plaintiff also brought this suit and request for a preliminary injunction, alleging that the Commission's investigation into Media Matters violates the First Amendment by retaliating against Media Matters for its protected expression. *See* Dkt.1 (Compl.) ¶ 107. Plaintiff's theory is that the FTC issued this CID as retaliation

---

[2] *See* Order Denying Petition to Quash Civil Investigative Demand, *In the Matter of Civil Investigative Demand to Media Matters for America Dated May 20, 2025*, FTC Dkt. No. 251-0061 (July 25, 2025) (PTQ Order), at 1.

for an article that plaintiff published in 2023 alleging that ads on X were appearing next to Nazi content. Dkt.34 (Op.) 5, 13. As evidence, plaintiff relies on (1) statements by Elon Musk and others who are not at FTC, (2) investigations brought by the States of Texas and Missouri that plaintiff does not allege were coordinated with FTC, (3) comments regarding plaintiff and its alleged practices (but not the 2023 article) by FTC staff who are not decisionmakers as to the CID, and (4) comments by Chairman Ferguson expressing concern regarding advertiser boycotts in general. Op. 5-10, 40-44.

The district court preliminarily enjoined the FTC from "implementing" or "enforcing" the CID. Dkt.35 at 1. In doing so, the court rejected the government's argument that district courts lack jurisdiction to hear such pre-enforcement challenges because Congress channeled such claims to FTC enforcement actions, which allow for judicial review. Op. 14-25. The court accepted plaintiff's claim of retaliation. Op. 31-46. And the court held that the likelihood that the investigation was retaliatory swayed the equitable factors in plaintiff's favor, without mentioning the countervailing harm of opening the door to pre-enforcement retaliation suits to enjoin government investigations. Op. 46-48.

Defendants promptly sought a stay pending appeal and an administrative stay, which the district court denied on August 22. Dkt.42.

# ARGUMENT

A stay pending appeal is warranted. The government is likely to succeed on the merits of its appeal, the government will face irreparable injury absent a stay, and the balance of equities and public interest support a stay. *See Nken v. Holder*, 556 U.S. 418, 426 (2009).

## I.     The FTC Is Likely To Prevail On The Merits.

The preliminary injunction is improper twice over: the district court lacked jurisdiction over Media Matters' claim, and regardless, the court committed serious legal error in misconceiving what purported evidence of retaliation suffices.

### A.     *Federal courts lack jurisdiction over pre-enforcement challenges to FTC CIDs.*

The district court was fundamentally mistaken to permit a pre-enforcement suit when Congress has precluded such suits through a carefully designed statutory scheme. A long, unbroken line of cases rejecting pre-enforcement challenges to FTC CIDs and subpoenas confirms that the statute creates an exclusive jurisdictional mechanism. Notably, neither plaintiff nor the district court cited a single case permitting a pre-enforcement challenge to a federal CID or subpoena.

Where Congress creates an exclusive jurisdictional mechanism to channel judicial review, such a "special statutory scheme may displace" the federal question jurisdiction of district courts, precluding other suits raising the same issues. *NTEU v. Vought*, ___ F.4th ___, No. 25-5091, 2025 WL 2371608, *4 (D.C. Cir. Aug. 15,

2025) (citing *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023)). The FTC Act does just that for pre-enforcement challenges to CIDs, both because "a preclusive intent is 'fairly discernible in the statutory scheme,'" and because "the claims at issue 'are of the type Congress intended to be reviewed within' the special scheme." *Id.* (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994)).

1.      Congress's preclusive intent is "fairly discernible" in the FTC Act's comprehensive statutory scheme. The FTC Act generally channels claims to enforcement proceedings brought administratively, followed by judicial review that includes review of constitutional claims, which is among the "typical[]" ways Congress precludes district court jurisdiction over pre-enforcement suits in a statutory scheme. *Axon*, 598 U.S. at 185; *see generally Thunder Basin*, 510 U.S. at 207-216. As to CIDs in particular, Congress gave recipients a right to petition the FTC to quash the CID. 15 U.S.C. § 57b-1(f). Recipients can also engage in extensive discussions and negotiations with FTC staff to resolve or narrow any disputes. *See* 16 C.F.R. § 2.4; *Morton Salt*, 338 U.S. at 653-54. And Congress expressly provided for judicial review of a CID, but only *after* the FTC seeks to enforce the CID in district court. *See* 15 U.S.C. § 57b-1(e), (h). In that enforcement action, plaintiff would have a forum for judicial review of any objections the recipient might have to the CID. *See, e.g.,* *FTC v. Claire Furnace Co.*, 274 U.S. 160, 174 (1927). And until a court rules on

those questions in an enforcement action, a CID recipient faces no penalties for non-compliance.

That careful statutory channeling, requiring objections to a CID to be raised in an enforcement action, protects the meet-and-confer process and ensures that any disputes are resolved on a specific factual record. It would frustrate the statutory scheme to allow piecemeal challenges to a CID, permitting some constitutional claims to be brought in a pre-enforcement injunctive action while all other objections must be litigated on a factual record in an enforcement action.

The Supreme Court accordingly recognized nearly a century ago that pre-enforcement challenges to an FTC subpoena should be dismissed for lack of jurisdiction. *Claire Furnace*, 274 U.S. at 174. Since then, courts have unanimously rejected similar pre-enforcement challenges to CIDs or subpoenas. *See Gen. Fin. Corp. v. FTC*, 700 F.2d 366, 368 (7th Cir. 1983) (a plaintiff "must wait till the government sues … since that is the method of judicial review of FTC investigations that Congress has prescribed"); *see also*, *e.g.*, *Belle Fourche Pipeline Co. v. United States*, 751 F.2d 332, 334-35 (10th Cir. 1984); *Wearly v. FTC*, 616 F.2d 662, 665 (3d Cir. 1980); *Am. Motors Corp. v. FTC*, 601 F.2d 1329, 1332, 1335-37 (6th Cir. 1979); *Blue Ribbon Quality Meats, Inc. v. FTC*, 560 F.2d 874, 876 (8th Cir. 1977); *Atl. Richfield Co. v. FTC*, 546 F.2d 646, 651 (5th Cir. 1977); *Anheuser-Busch, Inc. v. FTC*, 359 F.2d 487, 491 (8th Cir. 1966) (Blackmun, J.).

The district court's holding that the statute does not preclude jurisdiction here turns preclusion doctrine on its head and contravenes the Supreme Court's framework in *Thunder Basin* and *Axon*. The court stated, for example, that Congress had not precluded jurisdiction for pre-enforcement suits outside this scheme because the statute "says nothing about claims by recipients of CIDs wishing to challenge them." Op. 3. But as the court acknowledged, Supreme Court precedent establishes that Congress frequently precludes jurisdiction "implicitly," Op. 14, and the Supreme Court has repeatedly recognized that Congress has done so in the FTC Act—indeed, the Court has held so specifically as to challenges to FTC investigations. *See Claire Furnace*, 274 U.S. at 174; *Axon*, 598 U.S. at 185.[3]

The district court asserted that it is "unusual" for Congress to channel claims to a later federal action (rather than to an immediate administrative proceeding). Op. 15-16, but the court itself acknowledged that there is a line of cases doing just that. Op. 16. And again, the Supreme Court already did so in this very context in *Claire Furnace,* 274 U.S. at 174.

---

[3] Indeed, *Thunder Basin* did precisely what the district court pointedly refused to do (at 22): it treated a statute's authorization of certain district court actions *by the government* as evidence that regulated entities "enjoy no corresponding rights." 510 U.S. at 209 & n.1.

**2.** Plaintiff's claims are also clearly "the type Congress intended to be reviewed within this statutory structure" under the factors the Supreme Court has considered. *See Thunder Basin*, 510 U.S. at 212.

As to the first factor, applying the statutory scheme does not "foreclose all meaningful judicial review." *NTEU*, 2025 WL 2371608, at *5 (quoting *AFGE v. Trump*, 929 F.3d 748, 755 (D.C. Cir. 2019)). No legal consequences can flow from the CID unless the FTC brings an action to enforce the CID, and no one disputes that plaintiff could raise all of its claims in such a proceeding. 15 U.S.C. § 57b-1(h).

The district court claimed (at 24) that the FTC's position is foreclosed by *Media Matters for America v. Paxton*, 138 F.4th 563, 580 (D.C. Cir. 2025). But *Paxton* involved a CID that was issued by a state official pursuant to state law. Accordingly, the *Thunder Basin* framework (which addresses "challenges to *federal* agency action," *Axon*, 598 U.S. at 185 (emphasis added)) simply did not apply. Moreover, Congress in Section 1983 authorized suit against state officials. *Paxton*, 138 F.4th at 572.

The district court also asserted that plaintiff's ongoing harm could not be meaningfully redressed by a later action brought at the initiative of the FTC. Op. 23-24. But delay in resolving assertedly present harms is inherent in any statutory scheme where judicial review must await another step. *See Thunder Basin*, 510 U.S. at 207 (referring to "delayed judicial review"); *Standard Oil of Cal.*, 449 U.S. 232,

242 (1980) (observing that the issuance of an FTC administrative complaint had no "legal or practical effect, except to impose upon [plaintiff] the burden of responding to the charges made against it"). And Congress has already provided a means to specifically address any such harm by requiring the FTC to bring an action to enforce a CID before a recipient can suffer any penalties for not responding. This case therefore looks nothing like the here-and-now injuries of a structural constitutional violation that cannot be redressed by later proceedings. *See Axon*, 598 U.S. at 191.

Plaintiff's claim also is not "wholly collateral" to the statutory review scheme or "beyond the expertise of the agency" under the second and third factors. *NTEU*, 2025 WL 2371608, at *5-*6. Indeed, no one disputes that these claims are exactly the kinds of claims that would be adjudicated in an action to enforce the CID. And as the district court's opinion shows (at 44-45), plaintiff's claims are completely intertwined with questions about the CID's phrasing and scope, the CID's relationship to the purpose of the investigation, and FTC's authority.

The district court waved away both factors by asserting that the statutory scheme does not give the agency "a heightened role." Op. 23 (cleaned up). But the statute clearly *does* give the FTC a heightened role via the petition to quash process, the meet-and-confer process, and ultimately the decision whether any remaining areas of disagreement warrant an enforcement action. And again, plaintiff's claims

about the breadth and relevance of the CID and FTC's authority all go to matters within the FTC's expertise.

The district court also reasoned that plaintiff has an implied cause of action under the Constitution. Op. 25-26. But the statute channels plaintiff's constitutional claims to CID enforcement actions and provides for complete judicial review in that setting, so any implied cause of action here is precluded by the statutory scheme providing for exclusive jurisdiction. *See, e.g., Elgin v. Dep't of Treasury*, 567 U.S. 1, 10-23 (2012) (holding that constitutional claims were channeled to later proceedings); *Thunder Basin*, 510 U.S. at 215-16 (same).[4]

### B. *Plaintiff's retaliatory investigation claim fails on the merits.*

The district court's holding that Media Matters is likely to prevail on its First Amendment retaliation claim is wrong as a matter of law.

First Amendment retaliation doctrine appropriately imposes on Media Matters the difficult burden of demonstrating (1) protected speech, (2) retaliatory action that would deter a person of ordinary firmness, and (3) a causal link between the two.

---

[4] Plaintiff also lacks an implied equitable cause of action because equitable relief "is subject to express and implied statutory limitations," *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015), and because pre-enforcement relief of this type was not "traditionally accorded by courts of equity," *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999); *see also Reisman v. Caplin*, 375 U.S. 440, 443 (1964). And plaintiff lacks any cause of action under the APA for lack of final agency action.

*Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016).[5] To show the necessary causal connection between its speech and the purported retaliation, Media Matters must demonstrate at a minimum that the CID would not have been issued absent the retaliatory motive. *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

Here, as the district court correctly acknowledged, only one piece of protected speech is at issue: a 2023 Media Matters article regarding Elon Musk and X. Op. 3, 31. But, as detailed below, Media Matters put forward no evidence that the Commission issued the CID in retaliation for that article, instead resorting to comments, most of which were not made by relevant decisionmakers, that do not even mention the article (or, in some cases, the plaintiff). The district court's decision to attribute retaliatory motive based on such evidence is improper as a matter of law and could open the floodgates to similar retaliation suits based on online commentary and inferences from mere association of agency decisionmakers with outside commentators.

To start, the district court's approach is at odds with the presumption of regularity that the Executive Branch enjoys. *E.g.*, *United States v. Chemical Found., Inc.*,

---

[5] It is at best uncertain whether Media Matters' retaliatory investigation claim is even cognizable. The Supreme Court expressly left the question open in *Hartman v. Moore*, 547 U.S. 250, 262 n.9 (2006), and this Court declined to consider it in *Paxton*, 138 F.4th at 584. Meanwhile, caselaw from other circuits suggests such a claim should *not* be recognized. *E.g., Archer v. Chisholm*, 870 F.3d 603, 620 (7th Cir. 2017); *Rehberg v. Paulk*, 611 F.3d 828, 850 & n.24 (11th Cir. 2010), *aff'd*, 566 U.S. 356 (2012).

272 U.S. 1, 14 (1926); *Hartman*, 547 U.S. at 263; *Media Matters for Am. v. Bailey*, No. 24-cv-147, 2024 WL 3924573, at \*18 (D.D.C. Aug. 23, 2024); *see Abbott v. Perez*, 585 U.S. 579, 607 (2018) (rejecting district court's factual findings where the court "disregarded the presumption of legislative good faith and improperly reversed the burden of proof"). This presumption weighs especially heavily in the context of law enforcement investigations, a core prerogative of the Executive. Excessive judicial interference with investigations "could 'chill law enforcement,' cause delay, and 'impair the performance of a core executive constitutional function.'" *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) (quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996)); *see Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (noting that "the authority of the Presidency itself" must be considered when reviewing an action that is "within the core of executive responsibility").

The CID is part of a broader investigation into an area of significant concern for the FTC: advertiser boycotts. This investigation features a total of *seventeen* currently outstanding CIDs, including several directed to advertising trade associations, several directed to brand safety/suitability rating organizations, and several to policy and advocacy groups like Media Matters. PTQ Order at 2. The breadth of the investigation belies Media Matters' theory that the CID was issued in retaliation for a specific article by Media Matters. And Media Matters also cannot explain why the investigation includes several advocacy organizations besides Media Matters (which

of course did not write the same article). The district court did not even attempt to grapple with these important facts. *See Trump*, 585 U.S. at 711 (reversing preliminary injunction of executive action that was "expressly premised on legitimate purposes").

Instead, the district court began (at 40) by discussing certain statements by Chairman Ferguson. Tellingly, none of those statements so much as *mentions* Media Matters—in stark contrast to the *Bailey* and *Paxton* cases, both of which involved decisionmakers who directly criticized Media Matters in the context of issuing their respective CIDs. *Bailey*, 2024 WL 3924573, at *14; *Paxton*, 138 F.4th at 580.[6] The district court insisted that Chairman Ferguson's statements reveal "a partisan bent." Op. 40. But even if that were so (and the quoted statements make no mention of any political party), Chairman Ferguson's policy views about advertising boycotts are far afield from the question at hand: whether Chairman Ferguson intended to retaliate against Media Matters for a specific article.

It was also improper for the district court to point to statements by other FTC officials, who are not decisionmakers with respect to the CID. Op. 41-42. In support of doing so, the district court cited only a Title VII case that is directly at odds with

---

[6] The *Paxton* and *Bailey* cases are also distinguishable in other crucial respects: for example, they involved a closer temporal connection between the protected speech and the alleged retaliation, as well as more substantial allegations of pretext. Compl. ¶¶ 37-45; *Bailey*, 2024 WL 3924573, at *15-17. Thus, even assuming those decisions were correct, they do not support the district court's decision.

its position. That decision considered a non-decisionmaker's alleged bias only because "the record [was] replete with evidence of [that official's] involvement in the hiring decision." *Cones v. Shalala*, 199 F.3d 512, 519 (D.C. Cir. 2000). It expressly distinguished cases "where the plaintiffs had offered no evidence to establish that the [non-decisionmaker] … was even involved in the decisionmaking process." *Id.*

Here, Media Matters has not even *alleged* (let alone demonstrated) that any of these officials were in any way involved in the issuance of the CID. It was wrong as a matter of law for the district court to attribute their statements to Chairman Ferguson.[7] *See, e.g.*, *Staub v. Proctor Hosp.*, 562 U.S. 411, 418 (2011); *Ramos v. Wolf*, 975 F.3d 872, 897 (9th Cir. 2020). The district court's approach invites judicial second-guessing of an agency official's actions based on mere allegations that a different government official harbored some discriminatory motive. That could in turn open the door to impermissible intrusion on privileged Executive Branch deliberations, *see United States v. Nixon*, 418 U.S. 683, 708 (1974), and potential litigant-driven discovery that would disrupt the President's execution of the laws, *see Nixon v. Fitzgerald*, 457 U.S. 731, 749-50 (1982).

And the district court did not stop there: it prominently relied on statements by someone who has never worked at the FTC (or even in this administration). Op.

---

[7] In any event, none of these comments made any reference to the Media Matters article at issue.

41. It is entirely improper to attribute the views of such outsiders to agency decisionmakers.

Turning to the question of timing, the Media Matters CID was issued a year and a half after the article that supposedly precipitated it. As a matter of law, such a "lengthy time lapse … negates any inference" of a causal connection between the two. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) (cleaned up). The district court's contrary conclusion (at 42-44) is mistaken.

To begin, it was improper for the district court to analyze the timing of the CID in the context of the enjoined investigations by the Texas and Missouri Attorneys General, as there are no allegations of any coordination or even communication between the FTC and those officials. But even setting that aside, taking the timing of those investigations into account still does not help Media Matters because they had been enjoined by August of 2024, *Bailey*, 2024 WL 3924573, at *18, and the CID here was issued only in May of 2025.

The district court also erred by emphasizing that Chairman Ferguson made this investigation a priority upon becoming Chairman. It was entirely appropriate for him to do so, given that unlawful advertiser boycotts are a priority for him and the Commission. And the point remains that the issuance of a CID *in 2025* does nothing to tie that CID to an article published *in 2023* (or to any other much earlier event).

In other words, the timing here actually forecloses Media Matters' argument; but at the very minimum, it cannot possibly *advance* that argument.

Finally, the contents of the CID also refute Media Matters' position rather than supporting it. The district court appropriately acknowledged that several of the specifications are directly related to the subject matter of the investigation, Op. 45, and the same is equally true of the court's purported counterexamples. It is obviously sensible for the FTC to request "discovery in any litigation … related to advertiser boycotts," given that the investigation concerns possible advertiser boycotts. Op. 46. And Media Matters' financial documents could, of course, shed light on whether Media Matters had any involvement in a boycott (for example, by detailing Media Matters' potential financial incentives for involvement in a boycott, or revealing whether funds were expended on coordinating activities). Op. 46.

The district court similarly erred in inferring pretext from the fact that the FTC amended the CID to provide a more detailed explanation of the investigation's purpose. In reality, the FTC did so in response to Media Matters' motion to quash, *not* its retaliation suit. *See* PTQ Order at 3. It is exactly backwards to penalize the FTC for its good-faith efforts to accommodate Media Matters' concerns (which is presumably why Media Matters did not even make this argument).

It was also improper for the district court to fault the FTC for failing to reveal confidential details of the investigation, such as its specific evidentiary basis for issuing a CID to Media Matters. Op. 45. If federal law enforcement agencies were required to disclose their evidence and theories in order to be allowed to conduct their investigations, the concept of confidential investigations would be a dead letter. At any rate, even publicly available information makes clear why Media Matters might receive a CID in an investigation into advertiser boycotts. For example, Media Matters' website calls for an advertiser boycott even today.[8] Moreover, Congressional testimony has suggested that Media Matters participates in deplatforming and demonetization campaigns, and at least one Senator has suggested that Media Matters coordinates with advertisers.[9] This is especially true in light of the permissive standard for issuing a CID, which requires only that the FTC have "reason to believe" that Media Matters "*may be* in possession, custody or control of *any* [documents or information] *relevant* … to antitrust violations." 15 U.S.C. § 57b-1(c)(1) (emphases added).

---

[8] Media Matters for America, *Tell Advertisers: Drop Fox*.

[9] Benjamin Weingarten, Statement for the Record, U.S. Senate Committee on the Judiciary Subcommittee on the Constitution, "The Censorship Industrial Complex," at 7 (Mar. 25, 2025); Senator Eric Schmitt, "The Censorship Industrial Complex," Hearing of the U.S. Senate Committee on the Judiciary Subcommittee on the Constitution (Mar. 25, 2025) (placard viewable at 19:15).

In sum, Media Matters has not identified any competent evidence of retaliation, let alone sufficient evidence to prevail at this stage. If such flimsy accusations of bias were sufficient to make out a retaliation claim at the preliminary injunction stage, CID recipients could impede virtually any investigation simply by lodging vague allegations of bias. This outcome can be avoided only by demanding stronger causation evidence than the pastiche of impermissible inferences plaintiffs have offered here.

## II.     The Equitable Factors Favor A Stay.

The FTC is irreparably harmed by the injunction. The district court's order "is not merely an erroneous adjudication of a lawsuit between private litigants, but an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project of L.A. Cnty. Fed'n of Lab.*, 510 U.S. 1301, 1306 (1993) (O'Connor, J., in chambers). And as the Supreme Court recently explained, "the Government is likely to suffer irreparable harm from the District Courts' entry of injunctions that likely exceed the [courts'] authority." *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2562 (2025); *cf. Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury") (citation omitted). That principle governs here.

In addition, the injunction in this case is particularly burdensome. The district court has prevented the FTC from taking even the most basic investigative steps with respect to Media Matters—including even the ordinary meet-and-confer process that would precede CID compliance or an enforcement action—in a major investigation on an issue of enormous public interest. This harms the agency both by interfering with the pursuit of its law enforcement objectives, and by putting the agency to the administrative difficulty of separating out and halting a single component of a broad multi-party investigation. This difficulty would only grow more severe if other CID recipients followed Media Matters' example. *Cf. Gen. Fin.*, 700 F.2d at 369 (noting the gross inefficiency of "allow[ing] each of the 43 targets of the investigation to sue the FTC, maybe in 43 different districts"). The injunction also harms the public, which benefits from the robust enforcement of the antitrust laws. *See Standard Oil*, 449 U.S. at 242.

On the other hand, Media Matters suffers no irreparable harm from the mere issuance of the CID. As the Supreme Court emphasized nearly a century ago, there is no risk of penalty for noncompliance before a district court considers any objections in an enforcement action. *Claire Furnace*, 274 U.S. at 174; *see Standard Oil*, 449 U.S. at 244. Moreover, the harms asserted by Media Matters are largely akin to

those of any CID recipient. In many respects they are also self-inflicted, inasmuch as they reflect Media Matters' own choices or the consequences of those choices.[10]

Ultimately, Media Matters' harms cannot possibly offset the crucial importance of allowing the FTC to proceed with its important investigation. And the balance tips even further in light of the fact that, if left undisturbed, the district court's decision will undoubtedly encourage a flood of pre-enforcement challenges to subpoenas and CIDs issued by any number of federal agencies.

---

[10] For example, Media Matters voluntarily publicized the issuance of the CID. *See, e.g.*, Kate Conger, Kenneth P. Vogel and Theodore Schleifer, *Regulators Are Investigating Whether Media Matters Colluded With Advertisers* (The New York Times May 22, 2025).

## CONCLUSION

For the foregoing reasons, the Court should grant an immediate administrative stay of the district court's orders and a stay pending appeal.

Respectfully submitted,

DANIEL GUARNERA
*Director*

LUCAS CROSLOW
*General Counsel*

ALEX POTAPOV
*Deputy General Counsel*

KELSE MOEN
*Deputy Director*

GEOFFREY GREEN
*Assistant Director*

 /s/ H. Thomas Byron III
H. THOMAS BYRON III
*Deputy General Counsel*

BUREAU OF COMPETITION

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue NW
Washington, D.C. 20580
(202) 326-2527
*hbyron@ftc.gov*

August 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 5193 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 365 in proportionally spaced 14-point Times New Roman typeface.

*/s/ H. Thomas Byron III*
H. Thomas Byron III