NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 25-5302

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

MEDIA MATTERS FOR AMERICA,
*Plaintiff-Appellee*,

v.

FEDERAL TRADE COMMISSION, *et al.*,
*Defendants-Appellants*.

---

On Appeal from the United States District Court
for the District of Columbia

---

**REPLY IN SUPPORT OF
EMERGENCY MOTION FOR ADMINISTRATIVE STAY
AND FOR STAY PENDING APPEAL**

---

DANIEL GUARNERA
*Director*

KELSE MOEN
*Deputy Director*

GEOFFREY GREEN
*Assistant Director*

BUREAU OF COMPETITION

LUCAS CROSLOW
*General Counsel*

ALEX POTAPOV
*Deputy General Counsel*

H. THOMAS BYRON III
*Deputy General Counsel*

STEPHEN T. FAIRCHILD
*Attorney*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue NW
Washington, D.C. 20580
(202) 326-2527
hbyron@ftc.gov

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

ARGUMENT ......................................................................................................2

    I.    THE FTC IS LIKELY TO PREVAIL ON THE MERITS. .................2

        A.    THE FTC ACT CHANNELS PLAINTIFF'S CLAIMS TO AN ENFORCEMENT ACTION. ...............................................2

        B.    PLAINTIFF'S RETALIATORY INVESTIGATION CLAIM FAILS ON THE MERITS. ...........................................6

    II.    THE EQUITABLE FACTORS FAVOR A STAY. ..........................10

CONCLUSION ................................................................................................12

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases**

*Atl. Richfield Co. v. FTC*,
  546 F.2d 646 (5th Cir. 1977) ...................................................................................6

*Axon Enter. v. FTC*,
  598 U.S. 175 (2023) ............................................................................................3, 4

*Belle Fourche Pipeline Co. v. United States*,
  751 F.2d 332 (10th Cir. 1984) ............................................................................ 5-6

*Doe v. FAA*,
  432 F.3d 1259 (11th Cir. 2005) ...............................................................................5

*Maryland v. King*,
  567 U.S. 1301 (2012) ............................................................................................11

*Media Matters for Am. v. Bailey*,
  No. 24-cv-147, 2024 WL 3924573 (D.D.C. Aug. 23, 2024) ..................................7

*Media Matters for Am. v. Paxton*,
  138 F.4th 563 (D.C. Cir. 2025) ................................................................................5

*Nat'l Ass'n Immigr. Judges v. Owen*,
  139 F.4th 293 (4th Cir. 2025) ............................................................................ 4-5

*Nieves v. Bartlett*,
  587 U.S. 391 (2019) ..............................................................................................10

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) ........................................................................................... 2-4

*Trump v. CASA, Inc.*,
  145 S. Ct. 2540 (2025) .................................................................................... 10-11

*Yee v. City of Escondido*,
  503 U.S. 519 (1992) ................................................................................................7

## INTRODUCTION

Media Matters' opposition only highlights the urgent need for a stay. The district court's injunction is literally unprecedented: Media Matters still has not identified a *single* example of a successful pre-enforcement challenge to a federal agency's Civil Investigative Demand (CID) or subpoena. Media Matters instead invokes a novel and illogical theory—not embraced even by the district court—that Congress's decision to channel review of CID challenges to enforcement actions initiated by the FTC should be disregarded simply because that review would occur in a district court rather than a court of appeals. Media Matters also insists that the statutory review scheme can be overcome simply by pointing to its own reaction and the reactions of third parties to the issuance of the CID. That approach would leave the congressional design in tatters.

Media Matters similarly fails to rehabilitate the district court's legally flawed merits ruling, which was based on a hodgepodge of impermissible inferences. It continues to insist, for example, that a retaliatory motive can be inferred from statements of those who played no role in the decision.

The district court's injunction threatens to disrupt virtually any federal CID or subpoena based on mere assertions of retaliatory intent. This systemic harm would alone justify immediate relief, even setting aside the irreparable harm from the injunction's interference with an important investigation.

# ARGUMENT

## I. The FTC Is Likely To Prevail On The Merits.

### A. The FTC Act channels plaintiff's claims to an enforcement action.

The parties agree that Congress may enact a specialized statutory scheme to channel judicial review into a particular proceeding. Mot. 6; Opp. 3. Congress did precisely that in the FTC Act, satisfying both prongs of the *Thunder Basin* preclusion test.

**1.**　Congress's intent to preclude pre-enforcement review of CIDs is "fairly discernible." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994) (cleaned up). The FTC Act creates an interdependent scheme to protect CID recipients. It ensures that CIDs are not self-enforcing, establishes administrative processes (including the right to petition to quash and the opportunity to discuss CIDs with staff), and provides for judicial review, allowing all objections (including constitutional arguments) to be considered by a federal court in an FTC-initiated enforcement action, with no penalties for noncompliance until the court rules. Mot. 7-8. This structure ensures judicial review of all legal challenges before any obligations are imposed on CID recipients, while protecting the integrity of FTC investigations and allowing for a meaningful meet-and-confer process.

An unbroken line of decisions rejects pre-enforcement challenges to FTC (and other agency) CIDs and subpoenas. Mot. 8. The district court scarcely mentioned

2

this caselaw and incorrectly labeled Congress's decision to channel CID review in this manner "unusual." Op. 15. On the contrary, these cases demonstrate that courts have consistently upheld Congress's clear intent. Conversely, plaintiff has not identified any case allowing a pre-enforcement challenge to any federal subpoena or CID.

Media Matters glosses over these cases and advances an unsupported reading of *Thunder Basin*, contending that preclusion does not apply because "this case will end up *in district court*." Opp. 9. But the Supreme Court has never held or suggested that preclusion is available only when judicial review is available in a court of appeals. And while this may be a "typical[]" mechanism of channeling judicial review, it is not an exclusive one. *Axon Enter. v. FTC*, 598 U.S. 175, 185 (2023). More generally, Congress is free to decide how to channel review. Indeed, the district court acknowledged (though plaintiff ignores) cases holding that Congress can channel judicial review to an enforcement action. Op. 16-17.

**2.**    Media Matters' claims are of the type Congress intended to be reviewed within the FTC Act's structure, satisfying the three factors of *Thunder Basin*'s second prong. Mot. 10-12. Media Matters' only response is that *Axon* automatically opens the courthouse door to an asserted First Amendment injury. Opp. 9-10. That argument fails.

3

Unlike the fundamental challenge to the agency's authority in *Axon*, the claim that a CID violates the First Amendment can be meaningfully reviewed in an FTC-initiated enforcement action that a CID recipient may appeal. Under *Axon*, collateral claims are reserved for "extraordinary" challenges, such as those "to the structure or very existence of an agency," that cannot be meaningfully reviewed later. 598 U.S. at 180, 189. Moreover, *Axon* limited collateral challenges to claims involving threatened harm from ongoing agency proceedings. *Id.* at 192. Here, nothing in plaintiff's complaint attacks the FTC's structure or existence, and it faces no legal consequences because the FTC has not sought to enforce the CID.

Media Matters asserts that it may evade Congress's channeling because it has chosen to "modify operations" in response to the CID and because of the reactions of third parties who "fear[]" that Media Matters might comply with the CID. Opp. 2. But exclusive review schemes frequently "require parties to wait … even when doing so subjects them to significant burdens," *Axon*, 598 U.S. at 192 (quotation marks omitted), and even when the harms are irreparable and "onerous," *Thunder Basin*, 510 U.S. at 205, 218. Moreover, if a CID recipient's own reactions were sufficient to avoid Congressional channeling, *Thunder Basin* preclusion would be a dead letter. Virtually any CID recipient could claim similar harms. *See, e.g.*, *Nat'l Ass'n Immigr. Judges v. Owen*, 139 F.4th 293, 312 (4th Cir. 2025) ("Plaintiffs cannot

4

avoid jurisdiction stripping statutes like the CSRA by merely alleging an irreparable injury."); *accord Doe v. FAA*, 432 F.3d 1259, 1262-63 (11th Cir. 2005).

Media Matters' retaliation claim is intertwined with, and in no way "wholly collateral" to, Opp. 10, issues that are ordinarily addressed by the FTC and subject to judicial review in an enforcement action. Media Matters contends that the First Amendment protects some (unspecified) responsive information, that the CID is overbroad and burdensome, and that the FTC lacks authority to investigate advertiser boycotts. Opp. 6, 16, 19-20. Those arguments all raise overlapping questions about the CID's phrasing and scope, precisely the kinds of questions a federal district court would ordinarily resolve in an enforcement action if they remain in dispute. By contrast, allowing such sweeping claims in a pre-enforcement challenge would preempt the meet-and-confer process and the agency's refinement of the CID during the pre-enforcement period, and would require district courts to opine on broad questions of constitutional law without the concrete factual context of an enforcement action.

Media Matters relies on *Media Matters for Am. v. Paxton*, 138 F.4th 563 (D.C. Cir. 2025). But *Paxton* did not address preclusion by Congress, and CIDs issued by a state attorney general are not subject to the FTC Act.

Media Matters cites *Belle Fourche Pipeline Co. v. United States*, 751 F.2d 332 (10th Cir. 1984), to argue that "immediate, irreparable injury" permits its suit.

5

Opp. 12. But that decision *rejected* a pre-enforcement challenge to agency subpoenas because the plaintiffs had an adequate legal remedy and noncompliance incurred no penalties. 751 F.2d at 335 (citing *Atl. Richfield Co. v. FTC*, 546 F.2d 646, 649 (5th Cir. 1977) (same)).

Media Matters dismisses the concern about piecemeal CID challenges by claiming *Axon* supports two-track litigation and suggesting a CID enforcement action could be consolidated with this case. Opp. 13. But Congress did not contemplate separate cases raising different objections to a CID;[1] instead, the FTC Act precludes judicial review at the pre-enforcement stage, when the CID remains fluid and the parties can work to narrow the disputed issues.

### B. *Plaintiff's retaliatory investigation claim fails on the merits.*

The district court erred as a matter of law in crediting Media Matters' purported evidence of retaliation.[2] Mot. 12-20. Media Matters cannot seriously dispute

---

[1] Indeed, Media Matters itself recognizes elsewhere that it would be illogical for the claims here to be the subject of two simultaneous proceedings. Opp. 22.

[2] Media Matters does not address the caselaw suggesting that retaliatory investigation claims are not even cognizable. Mot. 13 n.5. Nor is the argument waived. *See* Op. 36.

6

that the presumption of regularity applies, particularly with respect to a core prerogative of the Executive. Mot. 13-14.[3] And the retaliation theory advanced by Media Matters and adopted by the district court is facially inadequate even without that presumption.

The investigation here is broad, pertains to an area of significant interest for the Commission, and involves several entities in the same category as Media Matters. Mot. 14-15. Media Matters responds by assuming retaliation and making it clear that it expects courts to speculate wildly in support of its theory. Why is the investigation so wide-ranging? *Maybe* the agency is "larding [the investigation] with seemingly innocent targets." Opp. 18. Why did other entities similar to Media Matters receive CIDs? *Maybe* they are also being retaliated against for their (unspecified) speech. *Id.* Why does the investigation have no apparent connection to the 2023 article? *Maybe* the FTC is also retaliating against Media Matters for other (again unspecified) speech. Opp. 17. Such speculation is no basis for an injunction.

Meanwhile, Media Matters' putative evidence is uniformly deficient as a matter of law. Media Matters has offered no link whatsoever between a decisionmaker

---

[3] Media Matters argues (at 20-21) that the presumption of regularity is forfeited. But the FTC's brief systematically applied Judge Mehta's causation framework, which incorporated the presumption of regularity. *Media Matters for Am. v. Bailey*, No. 24-cv-147, 2024 WL 3924573, at *18 (D.D.C. Aug. 23, 2024); *see* Dkt.27 at 36 (noting the lack of "unorthodox conduct"). At any rate, "parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992).

7

and the 2023 article that supposedly led to retaliation. It still has not identified any statement by Chairman Ferguson that even mentions Media Matters. Instead, it points to statements that purportedly reveal a "partisan bent." Opp. 15 (cleaned up).[4] But even if true, as a matter of law, the Chairman's policy views cannot establish the requisite connection between the CID and Media Matters' speech. Opp. 15. Media Matters also points (at 18-19) to statements by non-decisionmakers (which also do not concern the 2023 article), but cites no case where the purported motives of subordinates or outsiders who played no role in the allegedly retaliatory action were imputed to the decisionmaker.

As for timing, Media Matters fails to engage with the FTC's arguments (at 17-18) that (1) the one-and-a-half year gap between the article and the CID forecloses a causation finding as a matter of law; (2) it is improper to presume that the FTC CID should be considered alongside the State AG CIDs, given the lack of any allegations of coordination between the FTC and those AGs; (3) in any event, the CID was issued eight months after the state investigations were enjoined; and (4) even if Chairman Ferguson moved the investigation forward promptly in 2025, that does not help

---

[4] Media Matters also suggests (at 16) that advertiser boycotts are categorically protected by the First Amendment. But Media Matters conceded below that this question was at least debatable, Dkt.22-1 at 26, and the FTC is entitled to investigate *potential* violations of the antitrust laws.

8

connect the investigation to a much earlier event like the publication of an article in 2023.

As to the CID's contents, all the specifications are directly connected to the purpose of the investigation. Mot. 18. Media Matters takes issue with the specification pertaining to its financial documents.[5] As explained (at 18), there are straightforward reasons to ask for these documents, including that they could shed light on whether Media Matters expended funds on coordinating activities. Media Matters oddly criticizes the FTC for not affirmatively providing a defense of each of the other specifications, ignoring that the plaintiff bears the burden of demonstrating causation. Moreover, any claimed First Amendment privilege as to some of the specifications should be addressed, if necessary, in the concrete factual context of an enforcement action.

Finally, Media Matters faults the FTC (at 20) for not fully revealing the evidence and theories that led it to issue the CID. This overlooks:

- The highly permissive standard for issuing CIDs, which underscores that the FTC need not have a fully worked out theory at this early stage of the investigation, Mot. 19;

---

[5] The FTC addressed this specification in response to the district court; it had not been raised in Media Matters' briefing. Bizarrely, Media Matters accuses *the FTC* of forfeiting the argument. Opp. 19. Media Matters is also wrong to suggest that the FTC has changed position on whether it is investigating Media Matters for violating the law. Opp. 19-20. The FTC has consistently maintained that it is entitled to seek relevant documents from Media Matters regardless of whether Media Matters has broken the law. Dkt.27 at 35.

9

- The fact that the information Media Matters is demanding is confidential;[6]

- The publicly available evidence that connects Media Matters to advertising boycotts, Mot. 19;[7] and

- Most fundamentally, that the burden is on Media Matters to show causation, rather than on the FTC to allay Media Matters' suspicions.

In the end, Media Matters' position—endorsed by the district court—amounts to requiring the agency to prove the negative and rebut every conceivable inferential leap. This approach is foreclosed as a matter of law, would lead to judicial interference with the Executive, and risks unleashing a flood of pre-enforcement challenges to all manner of federal subpoenas and CIDs.

## II.   The Equitable Factors Favor A Stay.

As we have explained (at 20-21), the district court's improper injunction against the performance of a core executive function inherently causes irreparable harm to the FTC and the public. Media Matters downplays (at 22) the Supreme Court's decision in *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025), but *CASA* plainly stands for the broad proposition that "the Government is likely to suffer irreparable harm" when it "is enjoined by a court from effectuating statutes" and the district

---

[6] The hypothetical availability of burdensome procedures for preserving that confidentiality (Opp. 20) hardly solves the problem (and at any rate, Media Matters does not concede they would be available here).

[7] Media Matters complains that some of this evidence comes from Media Matters' speech. Opp. 20. But if protected speech can serve even as evidence of criminal wrongdoing, *see Nieves v. Bartlett*, 587 U.S. 391, 402 (2019), it can serve as evidence that Media Matters may have relevant documents.

10

court's injunction exceeded its authority. *Id.* at 2562 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C. J., in chambers)).

At any rate, the injunction here blocks the FTC from pursuing a component of a broad and important investigation. And the FTC need not demonstrate that *only* Media Matters is likely to possess the relevant information. Opp. 21. Such a rule would require an inquiry into how the government could achieve its law enforcement goals, which would constitute an improper judicial intrusion into confidential investigations and core executive functions. Moreover, the only way to make such a showing would be for the FTC to *already know* what information Media Matters and others possess—the very question the CID is designed to answer.

For its part, Media Matters relies (at 23) solely on its purported First Amendment harms. However, as explained above, its retaliation claim fails. Media Matters therefore has no harm at all to offset the grievous injury to the public and the FTC, which is exacerbated by the likelihood that the injunction will invite a barrage of similar pre-enforcement challenges.

11

## CONCLUSION

The Court should grant an immediate administrative stay of the district court's orders and a stay pending appeal.

|  |  |
|---|---|
|  | Respectfully submitted, |
| DANIEL GUARNERA<br>*Director* | LUCAS CROSLOW<br>    *General Counsel* |
| KELSE MOEN<br>*Deputy Director* | ALEX POTAPOV<br>    *Deputy General Counsel* |
| GEOFFREY GREEN<br>*Assistant Director* | /s/ H. Thomas Byron III<br>H. THOMAS BYRON III<br>    *Deputy General Counsel* |
| BUREAU OF COMPETITION | STEPHEN T. FAIRCHILD<br>    *Attorney* |
|  | FEDERAL TRADE COMMISSION<br>600 Pennsylvania Avenue NW<br>Washington, D.C. 20580<br>(202) 326-2527<br>hbyron@ftc.gov |

September 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 2581 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 365 in proportionally spaced 14-point Times New Roman typeface.

                                             */s/ H. Thomas Byron III*  
                                             H. Thomas Byron III