ORAL ARGUMENT NOT YET SCHEDULED
No. 25-5302

---

# In the United States Court of Appeals for the District of Columbia Circuit

---

MEDIA MATTERS FOR AMERICA,

*Plaintiff-Appellee*,

v.

UNITED STATES FEDERAL TRADE COMMISSION, *et al.*,

*Defendants-Appellants*.

---

Appeal from Order of the U.S. District Court, Civ. Action No. 25-1959 (SLS)
Granting Plaintiff's Motion for Preliminary Injunction

---

### BRIEF OF THE NEW CIVIL LIBERTIES ALLIANCE AS *AMICUS CURIAE* IN SUPPORT OF NEITHER PARTY

---

Margaret A. Little
*Counsel of Record*
L. Margaret Harker
New Civil Liberties Alliance
4250 Fairfax Dr., Ste. 300
Arlington, VA 22203
202-869-5210
Peggy.little@ncla.legal

Dated: January 12, 2026          Counsel for *Amicus Curiae*

## CERTIFICATE OF PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES

Under Circuit Rule 28(a)(1), the undersigned counsel certifies:

A. Parties and *Amicus Curiae*

The plaintiff-appellee in No. 25-5302 is Media Matters for America (Media Matters).

The defendants-appellants are the U.S. Federal Trade Commission (FTC) and Andrew Ferguson, in his official capacity as Chairman of the U.S. Federal Trade Commission.

*Amicus curiae* The Foundation for Individual Rights and Expression (FIRE).

*Amicus curiae* The New Civil Liberties Alliance (NCLA) is a nonpartisan, nonprofit, civil rights organization. It has no parent companies, subsidiaries, or affiliates that have issued shares or debt securities to the public.

B.    Ruling Under Review

*Media Matters for America v. FTC*, ___ F. Supp. 3d ___, No. 25-1959 (SLS), 2025 WL 2378009 (D.D.C. Aug. 15, 2025).

C.    Related Cases

None.

/s/ Margaret A. Little

## CERTIFICATE UNDER CIRCUIT RULE 29(b) AND (d)

Under Circuit Rule 29 (b) and (d), undersigned counsel for the New Civil Liberties Alliance, states that all parties have consented to the filing of this amicus, and that, to NCLA's knowledge, NCLA is the only *amicus curiae* filed in support of neither party and is the only *amicus* principally addressing the federal court jurisdictional question in this appeal.

/s/ Margaret A. Little

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* New Civil Liberties Alliance ("NCLA") is a nonprofit corporation. It has no parent companies, subsidiaries, or affiliates that have issued shares or debt securities to the public.

Under D.C. Circuit Rule 26.1(b), NCLA further states that it is a 501(c)(3) nonpartisan, nonprofit organization founded by Philip Hamburger that is dedicated to defending the constitutional protections and civil liberties of Americans. Some of those key principles are the separation of powers and constitutionally limited government. As part of this mission, NCLA appears as *amicus curiae* before federal and state courts.

/s/ Margaret A. Little

ii

# TABLE OF CONTENTS

CERTIFICATE OF PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES.................................................................................... i

CERTIFICATE UNDER CIRCUIT RULE 29(d) ........................................ ii

RULE 26.1 CORPORATE DISCLOSURE STATEMENT .................................... ii

TABLE OF AUTHORITIES ................................................................ iv

INTEREST OF AMICUS CURIAE........................................................1

SUMMARY OF ARGUMENT ............................................................6

RELEVANT CASE BACKGROUND....................................................9

ARGUMENT ...............................................................................11

   I.   THE SUPREME COURT'S HOLDINGS IN *AXON/COCHRAN* AND *FREE ENTERPRISE FUND* SUPPORT DISTRICT COURT JURISDICTION ....................................11

      A.  28 U.S.C. § 1331 Provides Jurisdiction.................................11

      B.  The Supreme Court's Application of the *Thunder Basin* Factors in *Free Enterprise Fund* and *Axon/Cochran* Also Supports District Court Jurisdiction .................................................................14

   II.  THE SUPREME COURT'S *JARKESY* DECISION SUPPORTS DISTRICT COURT JURISDICTION ................................................................17

   III.   LIKE *AXON/COCHRAN* AND *JARKESY*, AND UNLIKE *ELGIN* AND *THUNDER BASIN*, THIS CHALLENGE IMPLICATES STRUCTURAL ADJUDICATORY BIAS AND MUST BE HEARD IN DISTRICT COURT .................................................22

CONCLUSION ...........................................................................26

CERTIFICATE OF COMPLIANCE....................................................27

CERTIFICATE OF SERVICE ..........................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500, 514 (2006) ........................................................................10

*Axon Enter., Inc. v. FTC*,
  986 F.3d 1173 (9th Cir. 2021) ..................................................................3

*Axon Enter., Inc. v. FTC/SEC v. Cochran*,
  598 U.S. 175 (2023) ..............................................2, 4, 6, 7, 8, 11, 17

*Bebo v. SEC*,
  799 F.3d 765 (7th Cir. 2015) ....................................................................3

*Bennett v. SEC*,
  844 F.3d 174 (4th Cir. 2016) ....................................................................3

*Cochran v. SEC*,
  20 F.4th 194 (5th Cir. 2021) ...................................................................12

*Elgin v. Dep't of Treasury*,
  567 U.S. 1 (2012) ...................................................................................15

*Free Enter. Fund v. PCAOB*,
  561 U.S. 477 (2010) ..........................................................2, 6, 7, 11, 22

*FTC v. Claire Furnace*,
  274 U.S. 160 (1927) ...............................................................................12

*Hill v. SEC* and *Gray Fin. Grp. v. SEC*,
  825 F.3d 1236 (11th Cir. 2016) ...............................................................3

*Jarkesy v. SEC*,
  803 F.3d 9 (D.C. Cir. 2015) ......................................................................3

*Marbury v. Madison*,
  5 U.S. (1 Cranch) 137 (1803) .................................................................19

iv

*Martin v. Hunter's Lessee,*
  14 U.S. (1 Wheat) 304 (1816)....................................................... 19, 20

*Matters for America v. Paxton,*
  138 F.4th 563 (D.C. Cir 2025) ...........................................................12

*McNary v. Haitian Refugee Ctr., Inc.,*
  498 U.S. 479 (1991) ...........................................................................13

*Murray's Lessee v. Hoboken Land & Improvement Co.,*
  59 U.S. (18 How.) 272 (1856)............................................................21

*Plaut v. Spendthrift Farm, Inc.,*
  514 U.S. 211 (1995) ...........................................................................19

*Sackett v. EPA,*
  566 U.S. 120 (2012)............................................................................17

*SEC v. Jarkesy,*
  603 U.S. 109 (2024) ........................................................................2, 18

*Stern v. Marshall,*
  564 U.S. 462 (2011) ...........................................................................21

*Thunder Basin Coal Co. v. Reich,*
  510 U.S. 200 (1994)............................................... 7, 8, 13, 14, 16, 23

*Tilton v. SEC,*
  824 F.3d 276 (2d Cir. 2016) ................................................................3

*United States v. Cotton,*
  535 U.S. 625 (2002) ...........................................................................10

**Statutes**

12 U.S.C. § 1818...................................................................................18

15 U.S.C. § 57(b)-1(e) .........................................................................13

28 U.S.C. § 1331 ..................................................................................11

28 U.S.C. § 2201 ..................................................................................11

**Other Authorities**

Consumer Financial Protection Bureau v. Law Offices of Crystal Moroney, P.C.*:*
*Petition to Set Aside or, in the Alternative, to Modify the Fourth Civil*
*Investigative Demand*,
New Civil Liberties Alliance website. (Oct. 19, 2021, 7:28 PM ........................25

Dave Michaels,
*SEC Drops 42 Enforcement Cases After Employees Accessed Restricted*
*Records*, WALL ST. J., June 2, 2023 ......................................................................5

*In re Axon Enterprise, Inc.*,
No. 9389, 2023 WL 6895829 (F.T.C. Oct. 6, 2023) ..............................................4

Order Staying Proceedings and Denying Government's Request for Interlocutory
Appeal,
*In re Morris & Dickson Co., LLC*,
DEA Docket No. 18-31 (Nov. 1, 2018) ................................................................25

*Pending Administrative Proceedings*,
Exchange Act Release No. 97640, 2023 WL 3790795 (June 2, 2023)..................5

Philip Hamburger, *Nondelegation Blues*,
91 Geo. Wash. L. Rev. 1083 (2023)....................................................................20

The Federalist No. 78
(Alexander Hamilton) (Cooke ed. 1961) ............................................................21

**Rules**

D.C. Cir. R. 29(b)......................................................................................................1

**Regulations**

16 CFR § 2.10 .........................................................................................................13

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 9.....................................................................................20

## INTEREST OF AMICUS CURIAE[1]

The New Civil Liberties Alliance ("NCLA") is a nonpartisan, nonprofit civil rights organization and public interest law firm devoted to defending constitutional freedoms from the administrative state's depredations. Professor Philip Hamburger founded NCLA to challenge multiple constitutional defects in the modern administrative state through original litigation, *amicus curiae* briefs, and other advocacy.

The "civil liberties" of the organization's name include rights at least as old as the U.S. Constitution itself, such as the right to a jury trial, to due process of law, and to have laws made by the nation's elected legislators through constitutionally prescribed channels (*i.e.,* the right to self-government). These selfsame civil rights are also very contemporary—and in dire need of renewed vindication—precisely because Congress, executive branch officials, administrative agencies, and even some courts have neglected them for so long.

---

[1] No party's counsel authored any portion of this brief, and no party, party counsel, or other person other than *amicus curiae* made a monetary contribution intended to fund this brief's preparation or submission. All parties received timely notice of intent to file this *amicus* and have consented to the timely and proper filing of this *amicus*. NCLA filed its notice of intent and motion for leave to appear as *amicus* and file as *amicus* on January 7, 2026, pursuant to Circuit Rule 29(b).

NCLA aims to defend civil liberties—primarily by asserting constitutional constraints against the modern administrative state. Although Americans still enjoy the shell of their Republic, a very different sort of government has developed within it—a type that the Constitution was designed to prevent. This unconstitutional state within the Constitution's United States is the focus of NCLA's concern.

NCLA is particularly disturbed when government agencies appear to act unconstitutionally, or exert powers beyond their authority, by seeking to deny Americans access to the federal courts for vindication of their rights and enforcement of the rule of law against expansive and unlawful executive power.

NCLA's brief focuses exclusively on the question of whether the district court has the authority to hear this lawsuit. The district court ruled that it had jurisdiction, and FTC includes that aspect of the ruling in its appeal. Under the Supreme Court's precedents in *Axon Enterprise, Inc. v. FTC/SEC v. Cochran*, 598 U.S. 175 (2023) (*Axon/Cochran*), *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010) and *SEC v. Jarkesy*, 603 U.S. 109 (2024), district courts have jurisdiction to hear claims such as those raised in this complaint. In so ruling, the *Axon/Cochran* Supreme Court *unanimously* overruled or reversed, six circuit decisions that had endorsed delayed

"eventual"—and futile—judicial review, which had rendered the constitutional injury in those cases permanent, irremediable, and thus effectively unreviewable.[2]

NCLA has an interest in this case because it argued for and won the ruling in *Axon/Cochran* on behalf of Michelle Cochran and seeks to support and effectuate that victory in the lower courts. The FTC's briefing before the district court cited two of the cases in the footnote below without noting that they had been overruled by *Axon/Cochran*, *see* Defs.' Opp'n to Pl's. Mot. for Prelim. Inj. 12, 15-16 (citing *Bennett* and/or *Jarkesy I*); among other reasons, this brief is submitted to clarify the limited—indeed, countermanded—authority of such erroneously cited cases.

More broadly, NCLA's brief discusses the jurisprudential values protected by and practical importance of federal jurisdiction in such cases. The line of cases urged upon this Court by FTC to assert a lack of subject-matter jurisdiction have for far too long stranded innumerable enforcement targets with here-and-now constitutional objections to unconstitutional or unlawful agency action, consigning

---

[2] *Bennett v. SEC*, 844 F.3d 174 (4th Cir. 2016); *Hill v. SEC* and *Gray Fin. Grp., Inc. v. SEC*, 825 F.3d 1236 (11th Cir. 2016); *Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016); *Bebo v. SEC*, 799 F.3d 765 (7th Cir. 2015). The D.C. Circuit had similarly denied district court jurisdiction over jury trial and due process constitutional claims in *Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015) (*Jarkesy I*), claims upon which Mr. Jarkesy ultimately prevailed at the Supreme Court, rendering his 10-year journey through administrative process a complete nullity. *Axon/Cochran* also directly reversed the Ninth Circuit's decision to march in lockstep with these earlier circuit decisions in *Axon Enterprise, Inc. v. FTC*, 986 F.3d 1173 (9th Cir. 2021).

such targets to an unending, costly, and futile administrative wasteland. Agency insistence on prolonged and unreviewable investigations, a CID review process supervised only by the agency, and/or biased adjudications before the very agency alleged to be violating the Constitution, where the court of first appeal is the agency itself, followed by a possible after-the-fact circuit appeal that structurally defers to agency policy and fact-finding perpetuates and incentivizes agency overreach, waste and abuse of power. Justice Gorsuch's concurrence in *Axon/Cochran* put it this way:

> In 2019, the district court dismissed Ms. Cochran's suit without reaching its merits. … A year and a half later, a panel of the Fifth Circuit ran through the *Thunder Basin* factors and affirmed. A year and a half after that, the en banc Fifth Circuit took another look and largely reversed. Now, more than four years after Ms. Cochran filed her complaint, this Court … holds that her case belonged in district court all along. …
>
> This is what a *win* looks like … .

*Axon/Cochran*, 598 U.S. at 214-15 (Gorsuch, J., concurring) (citations omitted) (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)).

And in the end? After the Supreme Court ruled that Axon Enterprise, Inc. *could* bring a district court challenge to FTC's unconstitutional, biased and due-process-denying adjudication scheme in which the agency prevailed 100% of the time, the FTC quietly dismissed the case altogether without even notifying the company it was doing so. *In re Axon Enterprise, Inc.*, No. 9389, 2023 WL 6895829 (F.T.C. Oct. 6, 2023). Thus ended with a whimper Axon's

4

over five-year-long battle in which it steadfastly maintained FTC had abused its investigatory and regulatory power. SEC outdid FTC. After *Axon/Cochran* was decided on April 14, 2023, just six weeks later, the SEC dismissed all 42 of its open administrative prosecutions for alleged securities law violations rather than submit to federal court review of the constitutionality of its underlying conduct in any one of those pending cases, *Pending Administrative Proceedings*, Exchange Act Release No. 97640, 2023 WL 3790795 (June 2, 2023), a move that sent shockwaves through the financial press, in part because some number of those cases surely were otherwise meritorious.[3]

For these compelling reasons, NCLA submits this *amicus* brief.

---

[3] *See, e.g.*, Dave Michaels, *SEC Drops 42 Enforcement Cases After Employees Accessed Restricted Records*, WALL ST. J. (June 2, 2023, 4:49 p.m.), https://www.wsj.com/finance/regulation/sec-drops-40-enforcement-cases-it-says-were-tainted-by-improper-access-to-restricted-records-4807aa44?msockid=02886870ea0b6e283a967e47eb876f36 (SEC dismissed 42 in-house enforcement cases where enforcement staff improperly accessed restricted records meant for the agency's internal judges, tainting cases and raising questions about fairness, leading the SEC to drop proceedings including high-profile matters.).

## SUMMARY OF ARGUMENT

As far back as 2010, the Supreme Court in *Free Enterprise Fund* unanimously recognized that in-house administrative adjudication schemes do not oust otherwise available district court jurisdiction to hear constitutional questions. *See* 561 U.S. at 489. That long-standing and unqualified grant of jurisdiction was explicitly applied to the FTC by the also unanimous Supreme Court holding in *Axon/Cochran* in 2023 and accordingly decides the jurisdictional question in this appeal. *See* 598 U.S. at 180.

The FTC conjures up an implicit ouster of jurisdiction from the Federal Trade Commission Act of 1914's establishment of agency tribunals to hear cases *brought by the FTC* under its grant of authority to enforce a CID in court. But this is not such a proceeding. The FTC has not yet sued to enforce the CID in court. The mere existence of an in-house adjudication or CID enforcement scheme does not take away otherwise available district court jurisdiction to hear claims that an agency has violated the Constitution. To deny subject-matter jurisdiction now would make this court complicit in postponing relief that, in the words of Justice Kagan, would "come too late to be meaningful." *Axon/Cochran*, 598 U.S. at 191.

Even under the judge-made multi-factor balancing test of *Thunder Basin*, two recent, controlling Supreme Court cases, applying those factors, have unanimously found jurisdiction in the district courts to hear constitutional claims. Indeed,

*Thunder Basin* itself noted that adjudication of constitutional questions has "generally been thought beyond the jurisdiction of administrative agencies." 510 U.S. at 215 (quoting *Johnson v. Robison*, 415 U.S. 361, 368 (1974)). That makes sense. Administrative agencies lack any Article III powers at all. *Free Enterprise Fund* determined that constitutional claims that agencies are acting outside their constitutional powers raise "standard questions of administrative" and constitutional law, detached from "considerations of agency policy," 561 U.S. at 491 (quoting *Johnson*, 415 U.S. at 373) (cleaned up), and accordingly unanimously held that the district court had jurisdiction to hear the constitutional claims despite the agency's similar attempt to claim that the mere existence of its own internal tribunals implied preclusion of jurisdiction. As the *Free Enterprise Fund* Court held: "Petitioners' constitutional claims are also outside the Commission's *competence* and expertise." *Id*. at 491 (emphasis added).

So, too, in *Axon/Cochran*, the Supreme Court unanimously reversed six circuit courts of appeals to hold there was no implied jurisdiction-stripping under the FTC's administrative adjudication scheme. In doing so, it cycled through all three *Thunder Basin* factors and found that each commanded district court jurisdiction. 598 U.S. at 189-96. And correctly so. As an initial matter, it is anything but "fairly discernible" that the FTC's in-house CID enforcement scheme was intended to embrace these claims. This suit alleges that government-issued

7

demands that a nonprofit turn over its financials, budgets, editorial process, and records of association, Compl. ¶¶ 73-77, violate the First and/or Fourth Amendments to the Constitution. Adjudication of whether the government's demand infringes an investigatory target's rights of association and protections from unlawful search and seizure are exclusively assigned to the judicial branch. Further, applying the first two of the *Thunder Basin* factors, because the questions raised in this case are "wholly collateral" to any future agency enforcement action under the antitrust laws, and because delayed judicial review would foreclose any meaningful judicial review until after the constitutional injury has been inflicted, district court review is warranted. *See* 510 U.S. at 212-13. Finally, and fatally, because deciding the constitutionality of those demands is beyond the agency's *competence* and expertise, *see Axon/Cochran*, 598 U.S. at 188, all three *Thunder Basin* factors defeat FTC's attempt to channel the review before the very government agency whose allegedly unlawful action is in question. This third *Thunder Basin* factor—far too often misstated as the agency "expertise" prong when it should be known as the agency *competence* factor—alone would suffice to decide the question.

In addition to FTC's claim of jurisdictional preclusion being unfounded in law and incompatible with recent controlling Supreme Court decisions, FTC's position is illogical and violates the most rudimentary precepts of jurisprudence— that a party to a legal dispute cannot be the judge in its own case. Contrary to what

8

FTC argues here, an agency may not hold within its exclusive power the timing of and access to the federal courts where a preexisting statute clearly provides for jurisdiction for district courts to hear such claims.

## RELEVANT CASE BACKGROUND

In June 2025, after unsuccessfully seeking to quash the FTC's CID in a proceeding before the Commission, Media Matters filed a complaint in the United States District Court for the District of Columbia alleging that the FTC's extensive investigation and civil investigative demands for production of records pertaining to its financial and organizational records, editorial processes and organization and outside associations violated its First Amendment rights of speech and association and Fourth Amendment protections against unlawful government search and seizure. *See* Compl. ¶¶ 95-110. Shortly thereafter, it moved for a preliminary injunction, which the district court granted on August 15, 2025.

On August 18, 2025, FTC filed an emergency motion for stay pending appeal to this Court, which stay was denied by a panel of this circuit on October 23, 2025. Order (Oct. 23, 2025) (Millet, Wilkins and Walker, JJ., *per curiam*). The panel stated that FTC was unlikely to prevail on its claim of jurisdictional preclusion. *Id*. at 7. It acknowledged that while "[a]s a general rule, parties seeking to challenge the validity of a civil investigative demand … must wait for the agency to initiate an enforcement action in district court," *id*. at 5, it did not hesitate to rely on its own

9

circuit precedent upholding district court jurisdiction over a "sweeping" CID that "demonstrates actual and ongoing harm to [the demandee's] constitutional rights." *Id*. (citing *Media Matters for Am. v. Paxton*, 138 F.4th 563, 569, 579 (D.C. Cir. 2025)).

And while Judge Walker dissented from denial of the stay pending appeal by a separate opinion because he viewed that FTC was likely to prevail on the merits, that dissent did not endorse, nor even discuss, FTC's claims of jurisdictional preclusion. A lack of subject-matter jurisdiction would have been the decisive issue making his detailed dissent on the question of a stay of the injunction wholly unnecessary. The jurisdictional question logically precedes and supersedes this Court's rulings on the stay of an injunction, if the court lacked jurisdiction to hear the case at all. This is because federal courts, including appellate courts, have an independent obligation to determine whether subject-matter jurisdiction exists at every stage of the proceeding. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Because subject-matter jurisdiction involves the court's power to rule at all, it can never be forfeited or waived, *United States v. Cotton*, 535 U.S. 625, 630 (2002), and it must be immediately addressed when a valid claim is raised before the court.

This appeal by FTC claims (1) that the district court lacked subject-matter jurisdiction because the FTC statute exclusively "channels [Media Matters's] claim[s] to enforcement proceedings initiated by the FTC," Op. Br. 1; and (2) that

10

the district court erred in crediting Media Matters's retaliation claim. NCLA's *amicus curiae* brief addresses only the first question.

## ARGUMENT

### I. THE SUPREME COURT'S HOLDINGS IN *AXON/COCHRAN* AND *FREE ENTERPRISE FUND* SUPPORT DISTRICT COURT JURISDICTION

#### A. 28 U.S.C. § 1331 Provides Jurisdiction

Jurisdiction to hear claims by Americans who seek to vindicate their First and Fourth Amendment rights against the unlawful exercise of administrative power has long been established under 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." As Justice Gorsuch's concurrence in *Axon/Cochran* said, this means "[n]ot *may* have jurisdiction but *shall*. Not *some* civil actions arising under federal law, but *all*. The statute is as clear as statutes get … ." *Axon/Cochran*, 598 U.S. at 205 (Gorsuch, J., concurring) (emphases in original).

*Free Enterprise Fund* likewise recognized that 28 U.S.C. § 1331 provides the necessary and sufficient ground for jurisdiction. That court stated: "The Government reads [the agency's internal adjudication and circuit court review] as an exclusive route to review. But the text does not expressly limit the jurisdiction that other statutes confer on district courts. *See, e.g.*, 28 U.S.C. §§ 1331, 2201. Nor does it do so implicitly." 561 U.S. at 489. Indeed, the *en banc* Fifth Circuit held in

11

*Cochran v. SEC*, 20 F.4th 194, 203-04 (5th Cir. 2021) that *Free Enterprise Fund* "is enough to decide this case" as a matter of "control[ling]" precedent, regardless of the *Thunder Basin* factors.

As the panel denying a stay of the injunction in this case noted, this Circuit likewise recognized in *Paxton* that where a plaintiff submits evidence the court credits that it is suffering "present, concrete, and objective harms [to its] newsgathering activities and media business operations … that … will persist, … the demand's lawfulness can be challenged and remedied in district court." Order at 5-6. Those ongoing harms, chilling of expression, reporting and associational rights distinguished the claims in *Paxton* from the mine-run pre-enforcement CID challenge in *FTC v. Claire Furnace*, 274 U.S. 160, 168, 174 (1927) which alleged neither First Amendment chilling, association nor other constitutional claims, nor any already-accruing harm. Indeed, in the stay proceedings in this action, FTC did not even dispute the chilling and associational harms, other than to argue that those harms were "self-inflicted," a proposition unanimously rejected by this Court in *Paxton* when the panel agreed that impairment of the plaintiff's associational rights is "[o]n its face" an "ongoing" and "not self-inflicted" injury. *Paxton*, 138 F.4th at 588 (Henderson, J., concurring in the judgment),

In fact, FTC has no meaningful adjudicative regime at all into which to channel this lawsuit. Under FTC procedure for challenging CIDs, 15 U.S.C. § 57(b)-1(e), the FTC alone, and *at its discretion*, brings suit—or not—in the district court to enforce a CID. In the meantime, investigatory targets are exposed to indeterminate investigation and CID proceedings until the agency decides to act. Further, the Petition to Quash procedure which FTC established *by regulation*, 16 C.F.R. § 2.10, is clearly insufficient to oust otherwise-available district court jurisdiction, as this body of law only permits *Congress*, in limited situations, to create *statutory* schemes that delay judicial review. *Thunder Basin*, 510 U.S. at 207 n.8. (Asserting the "strong presumption that Congress did not mean to prohibit all judicial review" of agency action.) *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991) ("It is most unlikely that Congress[ional agency schemes are] intended to foreclose" all "meaningful judicial review.") It goes without saying that agencies cannot by regulation delay or extinguish otherwise available federal court jurisdiction, created by statute, to review their regulatory actions.

FTC's opening brief mischaracterizes the motion to quash rule as a "cooperative process." In fact, it is a coercive regulatory scheme over which FTC exercises iron control at every stage. The FTC lays this out in detail in its opening brief. Op. Br. 12-14. It requires the parties to "meet and confer" at all stages and that the objector raise all issues in the meet and confer or they are waived. The

13

Commission—the very entity that has issued the CID in the first place—rules on the motion to quash, and FTC asserts (dubiously) that its ruling is exempt from the definition of "final agency action" which, if true, would sound the death-knell to timely judicial review under the Administrative Procedure Act. And if there is no resolution, the Commission alone may file for judicial review in the district court. It should come as no surprise that the panel that denied the stay of injunction in this case noted that "Media Matters exhausted what little Commission procedure was available," a process which unsurprisingly denied relief. Order at 7.

## B. The Supreme Court's Application of the *Thunder Basin* Factors in *Free Enterprise Fund* and *Axon/Cochran* Also Supports District Court Jurisdiction

Having no channeling scheme at all alone decides the question. But, even assuming *arguendo* that FTC had such a proceeding, the Supreme Court held in *Thunder Basin* that provisions for agency review do not displace judicial review unless the "statutory scheme" displays a "fairly discernible" intent to limit jurisdiction, and the claims at issue "are of the type Congress intended to be reviewed within th[e] statutory structure." *Thunder Basin*, 510 U.S. at 207, 212 (internal quotation marks omitted). Otherwise, a pre-enforcement challenge to agency action could proceed in district court. Media Matters's claims of First Amendment injury are not conceivably of the type Congress intended to be reviewed within the statutory structure, even if FTC had one.

14

Another way to look at this issue is that plaintiff does not seek to circumvent an ongoing administrative adjudication proceeding that provided for later judicial review, as was the case in *Thunder Basin* and *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012). In *Elgin*, the Court examined a scheme where Congress set up an initial Merit Systems Protection Board proceeding followed by circuit judicial review that the Supreme Court found sufficient to take the place of district court jurisdiction. Likewise, in *Thunder Basin*, the ongoing Federal Mine Safety and Health Review Commission Board would be followed by circuit court judicial review before any constitutional harm would take place. By contrast, there is no Congressional system at all in which plaintiffs raising constitutional challenges to CIDs can bring their ongoing injuries. Here, Media Matters exhausted the wholly one-sided motion-to-quash mechanism FTC proffers by regulation to see if the agency would withdraw or alter the CID before it brought suit—and alleges ongoing constitutional injury.

*Thunder Basin itself* acknowledged competing presumptions on the jurisdictional inquiry. It noted that generally, when Congress creates procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are normally exclusive. However, it set forth the equally if not even more important presumption that Congress does not intend to limit jurisdiction if "a finding of preclusion could foreclose all meaningful judicial review"; if the suit is "wholly collateral to a statute's review provisions"; and if the claims are

15

"outside the agency's expertise." *Thunder Basin*, 510 U.S. at 212-213 (internal citations omitted). Thus, given that *Thunder Basin*'s framework applies *only* to statutory schemes under which "[judicial] review is available" at some point, *id*. at 207 n.8, it makes no sense to raise as a point of distinction, whether judicial review *might* be available later—the answer in those cases, unlike this case which lacks any scheme whatsoever—will always be yes. Rather, the correct inquiry must be whether judicial review will be "meaningful." And, as explained by the panel that denied a stay of the injunction in this case, judicial review is not meaningful if it comes only after having suffered the injury that the claim is seeking to prevent.

FTC's jurisdictional preclusion arguments leave recipients of administrative CIDs trapped in FTC's administrative machinery with no recourse to a federal court until the agency elects—or not—to unlock the courthouse doors, even when that machinery violates critical constitutional rights. Such preclusion would empower agencies to issue CIDs that inflict here-and-now suppression of speech, association and press freedom, even as they alone can keep the courthouse doors barred to relief. As the panel denying the stay said, this would allow agency CIDs to "demand all sources used either by certain reporters or for specific stories" while they alone hold the key to the courthouse. Order at 7. To the contrary, "[i]n a Nation that values due process," freedom of the press and expression, a regime that places fundamental "rights of ordinary Americans entirely at the mercy of [agency] employees," while

16

leaving them "blocked from access to the courts," is "unthinkable." *Sackett v. EPA*, 566 U.S. 120, 132 (2012) (Alito, J., concurring). Denying Americans enmeshed in agency proceedings a timely avenue for challenging the constitutionality of those proceedings and addressing the ongoing constitutional injury is likewise unthinkable.

> So, too, in *Axon/Cochran*:
>
>> And when we apply the *Thunder Basin* factors, we indeed come out in the same place as *Free Enterprise Fund*. … [T]hose claims cannot receive meaningful judicial review through the FTC Act or Exchange Act. They are collateral to any decisions the Commissions could make in individual enforcement proceedings. And they fall outside the Commissions' sphere of expertise. Our conclusion follows: The claims are not "of the type" the statutory review schemes reach. *Id.*, at 212. A district court can therefore review them.

*Axon/Cochran*, 598 U.S. at 189, 195-96.

## II. THE SUPREME COURT'S *JARKESY* DECISION SUPPORTS DISTRICT COURT JURISDICTION

Even Congress cannot evade Article III's requirements merely by stripping jurisdiction from an Article III court and reassigning it to an administrative agency. Were such a move to receive judicial blessing, Article III would be drained of its function as creating a separate branch of government in which the judicial power is vested. The constitutional rights *guaranteed* by the First and Fourth Amendments would be at the mercy of mere acts of Congress—eviscerating the whole idea of a *constitutional* right and the Constitution's structural vesting of distinct powers in

17

each branch. Congress may strip district courts of jurisdiction under certain circumstances, but it has no power to assign the judicial power of the United States to the executive branch.

The Supreme Court in *SEC v. Jarkesy* did not solely decide the scope of, nor the protections afforded by, the Seventh Amendment. Rather (and the Court was explicit on this point), the decision equally dealt with the limitations that Article III imposes on Congress's ability to delegate judicial functions to non-Article III tribunals. Specifically, *Jarkesy* held,

> [T]he judicial Power of the United States cannot be shared with the other branches … Article III could neither serve its purpose in the system of checks and balances nor preserve the integrity of judicial decisionmaking if the other branches of the Federal Government could confer the Government's judicial Power on entities outside Article III. … A defendant facing a fraud suit has the right to be tried … *before a neutral adjudicator*.

*Jarkesy*, 603 U.S. at 127, 132, 140 (emphasis added) (cleaned up).[4]

Relocating judicial power, even where Congress has explicitly stripped federal courts of jurisdiction, as Congress has done in some of its administrative review schemes, *see, e.g.*, 12 U.S.C. § 1818 (FDIC), violates Article III's Vesting

---

[4] Even the dissenting Justices recognized that the principal issue in the case was the scope of Article III. *See Jarkesy*, 603 U.S. at 171 (Sotomayor, J., dissenting) ("Although this case involves a Seventh Amendment challenge, the principal question at issue is one rooted in Article III and the separation of powers.").

Clause, which allows the judicial power of the United States to be exercised only by courts created under that Article. Because only courts—and not Congress—possess "judicial power," Congress cannot delegate to any other branch a power it does not itself possess in the first instance. In short, *Jarkesy* squarely forecloses FTC's argument since not even Congress could permissibly divest courts of Article III jurisdiction over constitutional challenges to FTC's CID scheme.

The principle that the Constitution unambiguously vests judicial power solely in courts resounds over centuries of case law, from *Marbury v. Madison*'s recognition of this demarcation—it is "emphatically the province and duty of the judicial department to say what the law is[,]" 5 U.S. (1 Cranch) 137, 177 (1803)—to cases such as *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218 (1995), where the Court held that § 27A of the Securities Exchange Act of 1934 violated the separation of powers. ("Congress cannot vest review of the decisions of Article III courts in officials of the Executive Branch.").

In *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat) 304 (1816), Justice Story emphatically explained that the vesting of judicial power in Article III courts is "manifestly designed to be mandatory upon the legislature. Its obligatory force is so imperative, that [C]ongress could not, without a violation of its duty, have refused to carry it into operation." *Id*. at 328. And it is Congress's "duty to vest the *whole judicial power*," *id*. at 330 (emphasis in original), and to do so "in one

19

supreme court, and in such inferior courts as congress may, from time to time, ordain and establish," *id*. at 328, under Article III of the Constitution. The *Hunter's Lessee* Court was explicit: Congress cannot vest *judicial* power in anybody other than courts created under Article III. *Id*. at 330. "[S]uch a construction … would be utterly inadmissible." *Id*.

To be sure, Congress has significant power over the organization and jurisdiction of the courts. Article III allows Congress to designate the location of part of the judicial power—but only in "inferior *courts*," not other bodies. Congress therefore cannot deposit *judicial* power in the FTC or any other administrative agency. *See id*. at 331 (Congress "might establish one or more inferior courts; [it] might parcel out the jurisdiction among such courts, from time to time, at [its] own pleasure. But the whole judicial power of the United States should be, at all times, vested either in an original or appellate form, in some courts created under [the United States'] authority."); *See also* Philip Hamburger, *Nondelegation Blues*, 91 Geo. Wash. L. Rev. 1083, 1110-12 (2023).

Because Article I empowers Congress to "constitute Tribunals inferior to the Supreme Court," U.S. Const. art. I, § 8, cl. 9, it might be thought that Congress could place the judicial power in "Tribunals" within FTC, which are not inferior courts. But this notion confuses the "courts," which exercise the judicial power of the United States, with the host of tribunals that do not and cannot exercise that

20

judicial power, such as territorial and District of Columbia courts, which exercise the judicial power, respectively, of the territories and of that district, not that of the United States.[5]

Hence, this separate power to constitute tribunals does not empower Congress to relocate the judicial power of the United States in bodies that are not inferior courts, such as executive agencies. In *Stern v. Marshall*, the Supreme Court stated that "Article III could neither serve its purpose … nor preserve the integrity of judicial decisionmaking if the other branches of the Federal Government could confer the Government's 'judicial power' on entities outside Article III." 564 U.S. 462, 484 (2011). Congress simply cannot shift judicial power from one branch to another, especially not, as argued here by FTC, to the prosecutor! That danger was expressly articulated at the Founding. "[T]here is no liberty, if the power of judging be not separated from the legislative and executive powers." The Federalist No. 78, at 523 (Alexander Hamilton) (Cooke ed. 1961).

---

[5] Congress also has the power to establish a non-Article III court such as the Court of Federal Claims, but only because the United States has sovereign immunity and may waive it on such terms as it deems fit. *See, e.g.*, *Stern v. Marshall*, 564 U.S. 462, 489 (2011), *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272 (1856).

Indeed, the unanimous jurisdictional holding in *Free Enterprise Fund* is just another way to make this point—in fact it is the teaching of that case. That court held that the plaintiff's constitutional claim was "outside the Commission's *competence* and expertise." *Free Enterprise Fund*, 561 U.S. at 491. Where, as here and in *Free Enterprise Fund*, only "standard" issues of administrative and constitutional law are involved, relating not at all to "considerations of agency policy," federal courts have jurisdiction under 28 U.S.C. § 1331 to decide such questions. *Id.* (internal quotation marks and alterations omitted).

## III. LIKE *AXON/COCHRAN* AND *JARKESY*, AND UNLIKE *ELGIN* AND *THUNDER BASIN*, THIS CHALLENGE IMPLICATES STRUCTURAL ADJUDICATORY BIAS AND MUST BE HEARD IN DISTRICT COURT

Our civil liberties are principally protected by the separation of the powers of government into three distinct branches. The question of whether an agency is violating the First and Fourth Amendment in its exercise of regulatory power must, by its very nature, be brought to an Article III court—not channeled to an administrative proceeding before the very adjudicator whose authority is at issue. Such a challenge raises concerns about the fair administration of justice across the whole of our judicial and legal system. Whether FTC has violated the plaintiff's rights in this broad and unreviewable CID has nothing to do with whether advertising boycotts violate the antitrust laws but is entirely collateral to that

22

question. *Thunder Basin*, 510 U.S. at 212-13. This challenge does not implicate the Federal Trade Act or any other statute that the FTC is charged with administrating, nor does it implicate claims that might ultimately prevail against the plaintiff. As Judge Walker's dissent from denial of the stay notes, "whether the Biden Administration violated the First Amendment or whether advertising boycotts violate antitrust laws … are important questions." He "take[s] no position" on either point and "[n]either, at least in this litigation, does Media Matters." Order at 41.

Instead, this challenge goes to the inadequacy of any internal review process and the constitutional legitimacy of the adjudicator which must first pass judgment on these claims. The claim is wholly collateral, beyond the agency's competence and expertise, and involves no consideration of agency policy. Understanding that this is essentially a separation-of-powers challenge to the insistence by an agency that it be, in the first instance, the judge of its own conduct, aligns the question entirely with the claims of judicial bias and lack of due process that were presented and deemed worthy of district court jurisdiction in *Axon/Cochran*. And, like those matters, the jurisdictional point of what branch of government should decide these questions is not a particularized, fact-based challenge to a particular decider, but a structural problem that applies across the board to agency attempts to force all challenges to the constitutional limits of its authority into its own structurally biased review schemes. Because this is wholly structural and unrelated to the antitrust

23

laws, there is no reason to invoke agency power or expertise at all—especially where under controlling Supreme Court law, the agency lacks competence to decide such questions in the first place.

The federal courts have long been charged with jurisdiction to prevent alleged infringements upon Americans' civil liberties. Understanding that this is a structural protection of individual liberty should help this court to recognize that the stakes here are the same as in *Axon/Cochran*. Any conclusion to the contrary undermines the separation of powers and its vital role in protecting our liberties.

Indeed, while the courts were wrestling with and dutifully following the circuit precedents that were ultimately unanimously overruled or reversed by *Axon/Cochran*, at least one administrative law judge asked to consider these questions devastatingly put his finger on the problem. Recognizing that pending motions in the district court raised due process and constitutional challenges to key aspects of the DEA's ALJ appointment and other authority, DEA ALJ Charles Wm. Dorman observed:

> I am not in a position to rule on the constitutionality of my appointment as an ALJ or on any other matter raised in Respondent's District Court motions. … Given the gravity of these issues, I believe staying this administrative proceeding is warranted while Respondent litigates these constitutional claims in the District Court. A stay also accords the District Court appropriate deference.

Order Staying Proceedings and Denying Government's Request for Interlocutory Appeal, *In re Morris & Dickson Co., LLC*, DEA Docket No. 18-31, at 3 (Nov. 1, 2018).[6] *Axon/Cochran* ultimately settled this issue.

While this DEA ALJ was exceptional in his willingness to think outside of his box, he was also exceptionally prescient and ultimately proven entirely correct. As noted above, administrative litigants such as Michelle Cochran, George Jarkesy, Axon and many others would have been spared their sometimes as much as a decade-long internment in administrative processes that would ultimately be held to be illegitimate altogether. And that observation does not only apply to targets trapped for years in illegitimate and life-altering *adversarial* proceedings. Consider the case of *In re Law Offices of Crystal Moroney, P.C.*, CFPB No. 2021-MISC-0001 (Oct. 19, 2021),[7] where the attorney plaintiff challenged Consumer Financial Protection Bureau (CFPB) CIDs that trapped her in repeated, unreviewable,

---

[6] After review on unrelated grounds by the U.S. District Court for the Western District of Louisiana and appeal to the U.S. Court of Appeals for the Fifth Circuit, this matter was settled. *See* Press Release, Drug Enforcement Admin., DEA Announces Settlement with Morris & Dickson Co., LLC (Feb. 7, 2024), https://www.dea.gov/press-releases/2024/02/07/dea-announces-settlement-morris-dickson-co-llc.

[7] *See, e.g.*, Consumer Financial Protection Bureau v. Law Offices of Crystal Moroney, P.C.*: Petition to Set Aside or, in the Alternative, to Modify the Fourth Civil Investigative Demand*, New Civil Liberties Alliance website, (Oct. 19, 2021, 7:28 PM), https://nclalegal.org/filing/petition-to-set-aside-or-in-the-alternative-to-modify-the-fourth-civil-investigative-demand/.

unexplained, unjustified and protracted CID demands from 2017 to 2024 that ultimately forced her out of business—despite not even being the target of any CFPB investigation. Unfortunately, Ms. Moroney's firm's Kafkaesque death-by-a-thousand CIDs is not unique in our vast administrative state.

Too often, courts fail to recognize the toll that unconstitutional or illegitimate investigatory and CID proceedings can take on the lives, livelihoods, reputations and fortunes of Americans trapped in investigatory mazes where the agency alone holds the keys to the courthouse.

## CONCLUSION

For the above reasons, this Court should affirm the district court's exercise of jurisdiction over this claim.

Respectfully submitted,

/s/ *Margaret A. Little*
Margaret A. Little
 *Counsel of Record*
L. Margaret Harker
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
(202) 869-5210
peggy.little@ncla.legal
*Counsel for* Amicus Curiae

January 12, 2026

**CERTIFICATE OF COMPLIANCE**

This brief complies with Circuit Rule 29(a)(5) because it contains 6061 words which is less than 6500 words. This brief also complies with the typeface and type-style requirements of FRAP 32(a)(5)-(6) because it was prepared using Microsoft Word 2013 in Times New Roman 14-point font.

Dated: January 12, 2026

*/s/ Margaret A. Little*

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2026, I electronically filed the above Brief of *Amicus Curiae* the New Civil Liberties Alliance in Support of Neither Party with the Clerk of the Court by using the appellate CM/ECF system. I further certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Margaret A. Little